[L. A. No. 22674. In Bank. Apr. 24, 1953.]

PAUL McNEAL, Appellant, v. LOUIS GREENBERG et al., Respondents.

Chester S. Johnson, Jerry Giesler, and Harold C. Holland for Appellant.

Parker, Stanbury, Reese & McGee and Raymond G. Stanbury for Respondents.

EDMONDS, J.—Paul McNeal rented a tractor from Samuel Greenberg and two other persons doing business as copartners under the name of Sam's U-Drive. When operating the vehicle, McNeal sustained personal injuries and sued the lessors for damages. The appeal is from a judgment entered upon a directed verdict in favor of the lessors.

In the first count of the complaint it is charged that the lessors negligently failed to make a proper test or inspection of the tractor before renting it to McNeal. As a result of such failure, it is alleged, he received the vehicle in a dangerous and defective condition. A second cause of action is based upon the theory of a breach of an implied warranty of fitness. It is alleged that the lessors warranted the tractor to be fit for the purpose for which it was hired and that McNeal accepted it in reliance upon such warranty. McNeal asserts that the defective condition of the brakes made the

machine unsafe and unfit for its contemplated use and caused the injuries for which he claims damages.

Section 408 of the Restatement of the Law of Torts, quoted with approval in *Rae* v. *California Equipment Co.*, 12 Cal.2d 563, 569 [86 P.2d 352], declares that a bailor for hire of a chattel must use reasonable care to make it safe for its intended use or disclose its actual condition to the bailee. In comment ''a'' under that section it is said: ''The fact that a chattel is leased for immediate use makes it unreasonable for the lessor to expect that the lessee will do more than give it the most cursory of inspections. The lessor must, therefore, realize that the safe use of the chattel can be secured only by precautions taken by him before turning it over to the lessee. . . . If the chattel is made by a third person, the lessor is required to exercise reasonable care to inspect it before turning it over to the lessee. . . . In addition to the inspection required when the chattel is acquired, the lessor is required to make from time to time such inspections of the articles, which he keeps for hire, as a reasonably careful man would make in view of the nature of the article and the use to which it is to be put.''

A bailor's implied warranty of fitness does not make him an insurer against all personal injuries suffered from the defective operation of the bailed chattel. He impliedly warrants only that he has exercised reasonable care to ascertain that the chattel is safe and suitable for the purpose for which it is hired. (*Dam* v. *Lake Aliso Riding School*, 6 Cal.2d 395, 399-400 [57 P.2d 1315]; *Kersten* v. *Young*, 52 Cal.App.2d 1, 6 [125 P.2d 501]; *cf. Miller* v. *Midway Fishing Tool Co.*, 106 Cal.App.2d 612, 614 [235 P.2d 630]; see anno. 12 A.L.R. 774; 61 A.L.R. 1336; 131 A.L.R. 845.) The essential inquiry, as on the cause of action based upon the theory of negligence, is whether the Greenbergs made such inspection of their equipment as was necessary to discharge their duty of reasonable care.

In support of the directed verdict, the lessors contend that the evidence is insufficient to show either a failure to make a proper inspection of the tractor or a defective condition existing at the time of hiring. Furthermore, they assert, by express contract McNeal released them from any implied warranty which might have arisen out of the hiring of the chattel.

The evidence concerning the events occurring immediately prior to the accident consists largely of the testimony of McNeal and two of his employees. McNeal, a licensed paving

contractor, stated that he went to the lessor's yard and asked to rent a "skip loader," a tractor equipped with scoop buckets and a scraper blade, which is used to level and grade land. He was told that none was available but that one was expected to be returned from a job at any time. Shortly thereafter he was shown one mounted on a trailer which, the lessor said, had just come in. He hitched the trailer to his automobile and took the tractor to a point about two or three blocks from the hillside lot where grading work was to be done by him. He then drove the tractor to the lot, which was situated about 200 feet from the crest of a small hill on a 20- or 30-degree slope.

When he reached the lot, McNeal commenced leveling operations, driving the tractor in reverse gear with the scoop lowered so as to dig into the earth. At the end of a run or "pass" he would stop, change gears, and proceed forward, gradually emptying the scoop bucket so as to distribute the dirt evenly over the ground. The work on that day required about 10 passes in each direction.

On the next day, he used the tractor on a different part of the lot. At that location the lot sloped downward to the south, at about the same angle as the adjacent road, to the top of an embankment, which dropped vertically a distance of eight or 10 feet to the adjoining land. His purpose was to remove a small ridge, about 20 feet long, the southern end of which was located two or three feet from the edge of the embankment. After backing toward the embankment, he would stop near the edge, change gears and go northward away from it. At the end of his third "pass," he again shifted to a forward gear and proceeded northward. After he had gone about 15 or 20 feet, he stopped, intending to shift into a reverse gear. Before he could do so, however, the tractor began rolling backwards. He applied the brakes, but they failed to hold, and the tractor went over the edge.

■ A court may direct a verdict for a defendant only when, with all conflicting evidence disregarded and the plaintiff's evidence given all the value to which it is legally entitled, there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Burgess* v. *Cahill*, 26 Cal.2d 320, 321-322 [158 P.2d 393, 159 A.L.R. 1304].) In the present case, the lessors contend that the evidence is insufficient to establish either a defect existing at the time the tractor was hired or, if the brakes were defective at that time, a defect of such a nature as would be disclosed by a

reasonable inspection. To permit such facts to be inferred from simply a failure of the brakes, they argue, would be to allow an inference to be founded upon another inference.

 Where a motor vehicle was obtained from an automobile dealer and shortly thereafter the brakes fail to operate, such failure, said this court, is sufficient basis for an inference that the brakes were defective at the time of the delivery of the vehicle and that a reasonable inspection would have disclosed the defect. (*Benton* v. *Sloss,* 38 Cal.2d 399, 404-405 [240 P.2d 575].) The cases relied upon by the Greenbergs for a contrary rule are distinguishable upon their facts. (*McCall* v. *Pacific Mail S. S. Co.,* 123 Cal. 42 [55 P. 706] [evidence showing a reasonable inspection had been made]; *Williams* v. *Lowenthal,* 124 Cal.App. 179 [12 P.2d 75] [defect located in part added subsequent to the delivery of the chattel]; *Ogden* v. *Baker,* 205 Okla. 506 [239 P.2d 393] [defective brakes held not to be evidence that gratuitous bailor knew of their condition].)

 The lessors take the position that any inference of a defect in the tractor existing prior to delivery must be deemed negated by McNeal's testimony showing extensive use of the vehicle by him prior to the accident. They also rely on evidence tending to prove sound condition of the brakes immediately after the accident.

McNeal testified that his operation of the tractor was conducted in low gear, in soft earth, with the scoop buckets engaged, or under other circumstances making use of the brakes unnecessary. And, although answers to direct inquiries as to whether he had made any attempt to use the brakes prior to the accident were conflicting, when considered in the light most favorable to the lessee's cause of action, his testimony would support a verdict in his favor. The evidence concerning the condition of the brakes after the accident created only a conflict.

 Another contention is that the only evidence showing a lack of inspection of the tractor prior to its delivery to McNeal was his testimony which, if given credence, established knowledge of that fact at the time he received the vehicle. Having such knowledge, the argument continues, McNeal cannot assert that he relied upon any inspection by the lessor. However, McNeal's testimony was corroborated by Gonzales, an employee, who told the jury that he saw the tractor and trailer arrive at the lessor's yard only a minute or two before

it was hitched to McNeal's car and taken away. From the brief interval that the machine was in the yard it could be inferred that no inspection of it was made.

Furthermore, McNeal stated that he had no knowledge that the tractor rented to him was the one which the lessors expected to have returned from another job. At the time of the trial, he stated he "assumed" that the tractor had just been received from a previous lessee. But he also said that, from all he knew at the time the tractor was delivered to him, it might have come from another yard. This evidence provides sufficient basis for a reasonable conclusion that he had no knowledge of a failure on the part of the lessors to make a proper inspection of their vehicle.

The lessors' final contention is that certain waiver provisions contained in the rental agreement preclude liability. No evidence was offered concerning the parties' understanding of the effect of the provisions and, in view of the explicit denial by McNeal that he signed the agreement, it is unnecessary to consider this point.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Schauer, J., dissented.