[Civ. No. 20738. Second Dist., Div. Two. Feb. 24, 1955.]

VIVIAN SPROUL, Appellant, v. WILLIAM THOMAS CUDDY et al., Respondents.

George W. Van Dyke and Owen M. Murphy for Appellant.

Sampson & Dryden for Respondents.

FOX, J.—The instant case is presented for appellate review for the second time. Previously, plaintiff purported to appeal from a minute order dismissing her complaint, no judgment having been made or entered. The sole question before the court was whether such an order was appealable. Holding that it was not, the court ordered the appeal dismissed as premature, and reinvested the trial court with jurisdiction to reopen the case for further proceedings. (*Sproul v. Cuddy*, 121 Cal.App.2d 197 [263 P.2d 92].) Thereafter, the trial court made and filed its judgment in favor of defendants. From this judgment plaintiff appeals.

By her first amended complaint, plaintiff sought recovery of damages for personal injuries based on three separate causes of action. The first and second causes of action sound in negligence, while the third cause of action is predicated on breach of warranty.

The first cause of action alleges that plaintiff was convalescing from an operation on her right leg and was unable to bear weight thereon; that she agreed to rent a device from defendants known as an "invalid walker," which consists of a frame in which is mounted a hinged seat, the frame being supported by four hollow-tubed legs resting upon individual casters; that pursuant to this rental agreement, the "invalid walker" was delivered to her; that at the time of the delivery, through the negligence of defendants, one of the casters was not securely fastened to the leg of the "walker," thus placing it in a condition unfit for the use for which it was rented and rendering it unsafe and dangerous; that when plaintiff for the first time attempted to use the "walker," one of the casters became disengaged from the leg of the walker, where-

upon it toppled over and threw plaintiff on the floor, thereby causing her injuries which were the proximate result of defendants' negligence. Also included is a description of the injuries and damage allegedly sustained. The second cause of action states defendants' negligence in general terms, alleging that such negligence was responsible for an unsafe and dangerous condition in the "invalid walker," and that as a direct consequence thereof, plaintiff was caused to fall upon the floor and sustain injury.

Plaintiff's third cause of action proceeds upon the basis of a breach of warranty. It alleges that for an agreed monthly rental, defendants furnished her with an "invalid walker," knowing it was to be used to aid her in moving about the house; that defendants warranted the "walker" to be fit and proper for such use and plaintiff relied on this warranty; that the "walker" when delivered to her, was not fit for the intended purpose but was, instead, in an unsafe and dangerous condition. It is further alleged that as a direct result of the defective condition of the walker, it toppled over upon plaintiff's first attempt to use it, causing her to fall and sustain injuries.

In their answer, defendants admit they furnished an "invalid walker" to plaintiff on a monthly rental basis. They denied the allegations of negligence and breach of warranty and set up the affirmative defenses of unavoidable accident, contributory negligence, and assumption of risk.

By leave of court, defendants filed an amendment to their answer interposing a seventh affirmative defense, whereby they alleged that plaintiff's husband, acting as her agent, arranged for and secured the rental of the "invalid walker," at which time he signed a document described as an "invoice and contract"; and that by reason of the notice and limitations contained in said document, plaintiff is "barred and estopped" from prosecuting any action against the defendants. A copy of the document was annexed to this pleading as Exhibit "A" and incorporated therein by reference. Having failed to file any affidavit as required by statute, plaintiff admitted the genuineness and due execution of Exhibit "A." (Code Civ. Proc., § 448.) Plaintiff's subsequent demurrer to this pleading on the ground that the facts therein alleged do not constitute a defense and her motion that it be stricken as irrelevant were overruled.

We deem it advisable at this point to reproduce Exhibit "A" in full, to wit:

Exhibit "A"

### PHYSICIANS OXYGEN SERVICE

| All Types of Masks Oxygen Tents Penicillin Aerosol Equipment | 4611 Melrose Avenue (DEL) Los Angeles 27, California (L.C.) 31 Day and Night Emergency Service NOrmandy 2-7992 - NOrmandy 6-300 | ~~3/26~~ Oxygen 10/26 Helium Carbon-Dioxide Carbogen 014542 |

Deliver to: MR. CHESTER H. SPROUL Date 8/1/1951
──────────────────────────────
 Licensee A.M.

WE RENT
Hospital Beds Delivery 8/1 P.M.
Wheel Chairs - Walkers
343 East 116th Therapy Lamps Due Date 9/1/51
──────────────────────────────
Address Telephone Number Inhalators
Fracture Equipment
Roll Away Cots - Diathermies
Medical Specialties Ordered by:

 City PL 51763 Mr. Sproul
──────────────────────── ──────────────
Closest Intersection

Bill to: Purchase Order No.
 1454221

TERMS: NET CASH ON DELIVERY NO REFUNDS Replacement Rental
 Value Charge

 $97.50 $8.28
(1) Invalid Walker with Crutch Support - Rented to 9/1/51

 key
 ReRental to 10/1/51 - 8.28 - C 42
 11/1/51 - 8.28 - C 54

LICENSEE---TAKE NOTICE---Licensor uses great care to have all of its equipment in good order and repair, gives no warranty expressed or implied, as to condition, quality or any other matter of any equipment sent out, and will in no way be responsible for damages resulting from use thereof. Licensee acknowledges that the above merchandise and/or equipment has been inspected and received in good condition and accepted as is, and the Licensee agrees to save and hold harmless the Licensor, for any damage sustained in the use of said merchandise and/or equipment.

 LICENSEE C. H. SPROUL (w)

When the case was called for trial, and prior to the impanelling of the jury, proceedings were had in the chambers of the trial judge upon defendants' motion to dismiss the second cause of action on the ground that it merely duplicated the first count. This motion was granted. While still in chambers, defendants next moved to dismiss also the remaining first and third causes of action for the reason that Exhibit "A" constituted, as a matter of law, a bar to the prosecution of the action. Thereupon, the court undertook

to hear and dispose of this issue in the manner of a special defense. (Code Civ. Proc., § 597.) During the ensuing colloquies between counsel and the court, the judge manifested his growing conviction that he might be able to adjudicate the controversy as a pure question of law, without the services of a jury, by construing the language of the purported release contained in Exhibit ''A.'' Plaintiff's counsel made an abortive attempt to dissuade the judge from proceeding without affording him a chance to present oral evidence regarding the instrument. He pointed out to the court that ''there is a question as to the receipt'' (Exhibit ''A'') and that ''a receipt is always subject to explanation by testimony to be introduced at the trial. What the testimony might be regarding this receipt, of course, no one knows.'' The judge appeared disinclined to proceed to trial, or to elicit facts concerning the transaction between the parties. He made no inquiry of plaintiff's counsel as to the nature of the evidence affecting the instrument that might be adduced. The judge stated: ''I am going to send that jury away until two o'clock. I am going to shut the door and I am going to work on these motions. At two o'clock I will be ready to rule on them. If we have to try any of them with a jury, we will go ahead and impanel the jury and try the special defense first on that release business. If it is one that I should decide is not subject for a jury verdict, I will try it myself.''

When the afternoon session of the court reconvened, the court addressed the jury, orienting them as to the proceedings which had taken place in chambers in the morning, and then announced his decision from the bench. He ruled that all of the counts of plaintiff's complaint be dismissed and directed that judgment be prepared accordingly. From the judgment ultimately entered, plaintiff has taken this appeal. Our review of the record and an examination of the applicable case law satisfies us that the judgment must be reversed.

The obvious error of the trial court stems from its apparent assumption that because of plaintiff's failure to deny the genuineness and due execution of Exhibit ''A'' by affidavit, as required by section 448 of the Code of Civil Procedure, she was therefore irrevocably bound by the legal effect of its provisions, and further inquiry into the question either of its validity or its binding effect was unnecessary. Such is not the law. It was open to plaintiff, without further pleading, to introduce evidence to sustain any legitimate de-

fense thereto except want of genuineness or due execution. (Code Civ. Proc., § 462; *Miller* v. *McLaglen,* 82 .Cal.App.2d 219, 224-226 [186 P.2d 48]; *Baird* v. *Pacific Elec. Ry. Co.,* 39 Cal.App. 512, 514 [179 P. 449].) As stated in *Miller* v. *McLaglen, supra*: ''Failure to file an affidavit does not preclude a plaintiff from making any defense whatever to the affirmative allegations of the answer. He could, by evidence, controvert the instruments upon any and all grounds except that he could not controvert their due execution or their genuineness. He could controvert the instruments by evidence of fraud, mistake, undue influence, mental incapacity, want of consideration, failure of consideration, compromise, estoppel, that they were void because not fairly made or fully comprehended; he could question their legal effect; he could attack them by any other defense that would be open if the instruments were the basis of an action [citing numerous cases].'' The pleadings do not reveal what, if any, defense plaintiff might have asserted against the admittedly genuine document, but under our system of pleading no such showing is required. (Code Civ. Proc., § 462; *Miller* v. *McLaglen, supra,* p. 226; *Baird* v. *Pacific Elec. Ry. Co., supra.*) From the state of the record confronting the trial court, plaintiff was entitled to the presumption that she had evidence to offer in attacking Exhibit ''A'' consistent with its genuineness and due execution. (*Miller* v. *McLaglen, supra,* p. 226; *Baird* v. *Pacific Elec. Ry. Co., supra,* p. 515.)

The recent case of *Palmquist* v. *Mercer,* 43 Cal.2d 92 [272 P.2d 26], is here instructive. The lower court granted defendant Mercer's motion for nonsuit on the basis of a written release executed by plaintiff. There was no question as to its genuineness and due execution. The Supreme Court reversed this judgment, holding nonetheless that ''the question of the validity of the release should have been submitted to the jury as a factual issue to be determined in the light of the circumstances surrounding its execution [p. 98].'' That it is ordinarily for the trier of the facts to pass upon the validity of a purported release is strongly emphasized in *Jordan* v. *Guerra,* 23 Cal.2d 469, 475-476 [144 P.2d 349], with abundant citation of authorities, and reiterated by this court in *Pacific Elec. Ry. Co.* v. *Dewey,* 95 Cal.App.2d 69, 71 [212 P.2d 255]. ■ Furthermore, it is appropriate to point out that the precise nature of the instrument here involved cannot be established from a mere inspection of the document. If, as plaintiff alleged in her complaint, the rental

was made upon a warranty of fitness, then the nature of the document signed—whether it was contractual in character or a mere invoice, delivery receipt, bill of parcels or other informal memorandum—becomes of extreme significance in the ascertainment of whether the language of disclaimer of warranty was binding upon plaintiff under the circumstances attending the transaction. (See *India Paint & Lacquer Co.* v. *United Steel Prod. Corp.*, 123 Cal.App.2d 597, 606, 611 [267 P. 2d 408].) As this court stated in the last cited case, in considering the effect of a statement of disclaimer of warranty upon an instrument delivered to a purchaser of goods: " 'The sole question seems to be whether the facts present a case where the person receiving the paper should, as a reasonable man, understand that it contained the terms of the contract which he must read at his peril and regard as a part of the proposed agreement. The precise facts of each case are important in reaching a conclusion.' " (P. 611.) Thus, the introduction of evidence was essential to clarify the legal status of Exhibit "A," which, on its face, is a hybrid instrument, whose tone, nature and effect would depend on the situation accompanying its execution and delivery.

In view of the fact that various aspects of the case, in the light of the pleadings, would turn upon the determination of the issues of fact referred to hereinabove, it was error for the court to take the case from the jury before plaintiff even had an opportunity to make an opening statement of her case, and without even an inquiry by the court into the nature of the evidence plaintiff was prepared to offer. ▊ "A complaint should never be dismissed unless it appears to a certainty that no basic right of action can possibly exist or no relief can possibly be granted. It is a rare case when a litigant may be denied his day in court without a hearing." (*Miller* v. *McLaglen*, 82 Cal.App.2d 219, 228 [186 P.2d 48].)

But there are other and equally compelling reasons for holding that Exhibit "A" does not, as a matter of law, release defendants from liability for every breach of warranty or every type of negligence. Assuming for present purposes that Exhibit "A" is in every respect valid, and further assuming that the limitation notice therein contained was fully binding on plaintiff, it may not be said that the language appearing therein exculpates defendants, as a matter of law, from possible liability for breach of warranty of fitness or for failure to use due care to see that the article furnished is reasonably fit for the purpose for which it was rented out.

■ Turning first to the question of breach of warranty, the law is clearly settled that the bailor of a chattel impliedly warrants ''that he has exercised reasonable care to ascertain that the chattel is safe and suitable for the purpose for which it is hired [citations].'' (*McNeal* v. *Greenberg*, 40 Cal.2d 740, 742 [255 P.2d 810].) Civil Code, section 1955, contains a statutory declaration of the obligations of a lessor of personalty: ''One who lets personal property must . . . put it into a condition fit for the purpose for which he lets it. . . .''

■ It is an elementary principle of contract jurisprudence that where there is a statute upon a subject covered by a contract, it enters into and becomes a part of such contract, if it can be reasonably so construed. (*Brown* v. *Kling*, 101 Cal. 295, 299 [35 P. 995]; *Bell* v. *Minor*, 88 Cal.App.2d 879, 881 [199 P.2d 718]; 12 Cal.Jur.2d 348.) ■ The pertinent language of Exhibit ''A'' reads: ''*Licensor uses great care to have all of its equipment in good order and repair,* gives no warranty expressed or implied, as to condition, quality or any other matter of any equipment sent out, and will in no way be responsible for damages resulting from the use thereof.'' (Italics added.) It is at once evident from any reasonable construction of this language, and bearing in mind the rule that contracting parties are presumed to have had the applicable law in view (*Brown* v. *Kling, supra*), that there appears no intent or purpose to exempt defendants from liability for a breach of the warranty of fitness, which, as noted in *McNeal* v. *Greenberg, supra,* obligates a bailor to exercise reasonable care to see that the chattel is fit for the intended purpose. Far from disavowing this warranty, which the law ordinarily implies as an incident to the lease of personal property, this language explicitly affirms and warrants that the ''licensor [defendants] uses great care to have all of its equipment in good order and repair'' before it is rented. (*Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578, 593 [271 P.2d 122].) It clearly manifests a recognition and acknowledgment by defendants, at the very least, of their ordinary responsibility as bailors of personal property, rather than of any attempt to shed such obligation. The succeeding clause, that licensor ''gives no warranty, expressed or implied, as to condition, quality, or any other matter of any equipment sent out,'' if it is to have any meaning or vitality in view of the warranty contained in the preceding language, must be construed to relate only to the specific subjects there mentioned and not as an attempt to negate or detract from

the affirmation in the prior clause. To achieve the interpretation contended for by defendants, it would be necessary to ignore completely or render nugatory the opening language of the notice, which would be obnoxious to established canons of construction. In short, to avoid repugnancy, to reconcile the clauses and give a reasonable construction to the instrument in line with the general intent therein expressed and the rules of contract law (*Royal Ins. Co.* v. *Caledonian Ins. Co.*, 20 Cal.App. 504, 506 [129 P. 597]; *Todd* v. *Superior Court*, 181 Cal. 406, 418 [184 P. 684, 7 A.L.R. 938]; *Broome* v. *Broome*, 104 Cal.App.2d 148, 157 [231 P.2d 171]), a fair interpretation of the paragraph is that if the bailor has exercised such reasonable care as is required of him to comply with his warranty of fitness, his disclaimer of warranties as to condition, quality, etc., insulates him against the strict liability of warranty in the event of the existence of defects or imperfections in the leased article which may have escaped detection despite his exercise of reasonable care. (*Basin Oil Co.* v. *Baash-Ross Tool Co., supra.*) It is thus clear that it was a question of fact for the jury as to whether defendants, a part of whose business consists of renting appliances to convalescents, had "made such inspection of their equipment as was necessary to discharge their duty of reasonable care." (*McNeal* v. *Greenberg*, 40 Cal.2d 740, 742 [255 P.2d 810].)

Passing now to the cause of action based on negligence, *McNeal* v. *Greenberg, supra,* states the general rule "that a bailor for hire of a chattel must use reasonable care to make it safe for its intended use or disclose its actual condition to the bailee." Therefore, the question posed is: Assuming, as we must, that defendants had failed to use reasonable care to make the "invalid walker" safe for its intended purpose, was the trial court correct in ruling, as a matter of law, that the language contained in Exhibit "A" exculpated defendants from the consequences of such negligence? From an analysis of the language employed, the answer must be in the negative.

This court was confronted with the identical issue here presented in *Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal. App.2d 578 [271 P.2d 122] (hearing denied). In that case, in holding that language of similar import did not relieve defendant from liability in tort for its negligence, we had occasion to examine the prevailing authorities in this and other jurisdictions and discuss the principles governing the interpre-

tation of such attempted exculpatory statements. ▉ We epitomize what is there stated, so far as it is here germane and without reference to the authorities cited therein (pp. 594-597): Except where discountenanced by public policy or some statutory inhibition, a party may contract to absolve himself from liability for negligence; the law, however, looks with disfavor on such attempts to avoid liability or secure exemption from one's personal negligence, and construes such provisions strictly against the person relying on them, especially when he is the author of the document; ▉ to be sufficient as an exculpatory provision against one's own negligence, the party seeking to rely thereon must select words or terms clearly and explicitly expressing that this was the intent of the parties; ▉ and that seemingly broad language will not be isolated from its context and will be read with due regard to the maxim of strict construction.

▉ Here, as stated in the Basin Oil case, *supra,* page 596, Exhibit ''A'' must be construed most strongly against defendants ''as being the product of its own draftsmanship and designed to whittle down the normal and ordinary rights of a customer. (*Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682, 693, 694 [268 P.2d 1041].)''

▉ Measured by the above criteria, it is at once apparent that not only does Exhibit ''A'' contain no reference to negligence, nor any clear and explicit indication that defendants were attempting to relieve themselves of their duty of using due care with reference to their rental of the ''invalid walker,'' but the exact contrary appears from the opening asserveration that the licensor ''uses great care to have all its equipment in good order and repair.'' This statement, even if attenuated so as to relate to reasonable care rather than ''great care,'' permeates the entire limitation notice and is the precondition for the operation of the comprehensive exculpatory declarations which follow. It qualifies and limits, at least to the extent there announced, the ensuing language. Such an interpretation is plainly dictated by the principles to which we have hitherto adverted. It seems also to give all the language used a harmonious construction and avoids perverting the notice into nothing more than a semantic trap for the unwary. We deem it apposite to quote here, as we did in the Basin Oil case, the following significant language from *Pacific Indem. Co.* v. *California Elec. Works, Ltd.,* 29 Cal.App.2d 260, 274 [84 P.2d 913]: ''the provision of a contract relieving one of the parties thereto from liability for his or its own negligence

should be clear and explicit. While it is true that the language used in the quoted provision of the contract before us, that the agent shall hold the company 'harmless from all claims, suits, and liabilities of every character whatsoever and howsoever arising from the existence or use of the equipment at said station' is broad and comprehensive, it is, as stated by the court below, provocative of some doubt. The defendant itself wrote the provision into the contract for its own benefit. It could have plainly stated, if such was the understanding of the parties, that the plaintiff agreed to relieve it in the matter from all liability for its own negligence. As it did not do so, we resolve all doubt, as we should, in favor of the plaintiff, and hold that it was not the intent of the parties to give to the contract as written the effect claimed by the company.'' Similarly, here, it cannot be reasonably contended that a party who announces that he uses great care to have his rental equipment in good order and repair was attempting to exculpate himself from liability if the facts should show that he used no care whatsoever, or indeed, was grossly negligent. Here too, an issue of fact exists as to the quantum of care, if any, used by defendants with respect to their inspection of the device bailed to plaintiffs.

Defendants cite such decisions as *Nichols* v. *Hitchcock Motor Co.*, 22 Cal.App.2d 151 [70 P.2d 654], and *Stephens* v. *Southern Pac. Co.*, 109 Cal. 86 [41 P. 783, 50 Am.St.Rep. 17, 29 L.R.A. 751]. Those cases are readily distinguishable by virtue of the difference in the exculpatory language used. In none of those cases does there appear, as here, a positive assertion or commitment on the part of the lessor that he would exercise care in the conduct of his own activities as they related to the subject matter of the bargain. Defendants also rely on *Werner* v. *Knoll*, 89 Cal.App.2d 474 [201 P.2d 45]. That case differs from the present matter, in the first instance, as being concerned with a lease of real property executed between a landlord and tenant. Secondly, the language therein also shows a complete absence of any declaration on the landlord's part that he would conduct his affairs in and about the leased premises with care. Thirdly, it may be noted in passing that even in landlord-tenant situations, the rule of the Werner case has been limited in the recent cases of *Butt* v. *Bertola*, 110 Cal.App.2d 128, 138-140 [242 P.2d 32], and *Barkett* v. *Brucato*, 122 Cal.App.2d 264, 278 [264 P.2d 978], by the application of the maxim of strict construction of an exculpatory writing against its draftsman.

Plaintiff has suggested that so far as Exhibit ''A'' purports to relieve defendants of liability for breach of their obligations as declared in section 1955 of the Civil Code, it comes within the purview of section 1668 of the Civil Code as a contract against the policy of the law. We expressly refrain from passing upon this question, inasmuch as our views on the inefficacy of the exculpatory language makes it unnecessary to consider this further issue.

Finally, it was clearly error to dismiss plaintiff's second cause of action as a mere duplication of the first. The gravamen of plaintiff's first cause of action is a specific act of negligence. In her second cause of action she has alleged defendants' negligence in general terms. She has thus set up defendants' specific and general negligence in separate counts. This is in accord not only with approved, but exemplary, pleading practice. (*Bourguignon* v. *Peninsular Ry. Co.,* 40 Cal.App. 689, 692 [181 P. 669]; *Robert* v. *Sierra Ry. Co.,* 14 Cal.App. 180, 192 [111 P. 519, 527]; *Ellis* v. *Jewett,* 18 Cal. App.2d 629, 635 [64 P.2d 432]; *McCole* v. *Merchants Express Corp.,* 19 Cal.App.2d 149, 151 [64 P.2d 1130].) The advantage to a plaintiff in clearly setting out the alleged negligence in both general and specific terms is illustrated in *Leet* v. *Union Pac. R. Co.,* 25 Cal.2d 605, 617-619 [155 P.2d 42, 158 A.L.R. 1008].

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.