[Civ. No. 22294.   Second Dist., Div. Two.   Nov. 13, 1957.]

AMERICAN AUTOMOBILE INSURANCE COMPANY (a Corporation), Plaintiff and Respondent, v. SEABOARD SURETY COMPANY (a Corporation) et al., Appellants; ASSOCIATED INDEMNITY CORPORATION (a Corporation) et al., Cross-Defendants and Respondents.

Joseph F. Rank for Appellants.

Parker, Stanbury, Reese & McGee and A. P. G. Steffes for Respondents.

ASHBURN, J.—This is a controversy between two insurance companies as to responsibility for a judgment obtained by one Frances L. Whaley against Republic Productions, Inc., based upon injuries caused by negligence of said Republic. That company was protected by two liability insurance policies covering the Whaley accident. One was issued by Seaboard Surety Company, appellant herein, and the other by American Automobile Insurance Company, respondent.[1] The trial court held that each insurance company must bear and discharge half of the obligation and rendered judgment accordingly.

In the latter part of 1951 Joseph Kaufman Productions, Inc., being about to produce a motion picture entitled "Sudden Fear" rented studio facilities belonging to Republic

[1] These corporations will be designated in abbreviated fashion as follows: Republic, Seaboard, American; and Joseph Kaufman Productions, Inc. will be referred to as Kaufman.

under a written agreement. The scope of the rental is described in paragraph 2 of the instrument: "We agree to furnish you such of our studio facilities, services and equipment as may be available and reasonably required for the production of said photoplay, including reasonable stage and office space, physical facilities and equipment, sound recording equipment, all crews and production personnel (excluding producers, writers, actors, actresses, composers, directors and similar professional employees), and the reasonable use of all studio departments including the right to consult with heads of departments, and you agree to use said facilities, personnel and equipment (the foregoing being hereinafter referred to as 'studio facilities') for the production of said photoplay." The present controversy grows out of paragraphs 10 and 11 of that agreement and their application to liability insurance policies which were in force at the time of the accident.

Republic was covered by a Seaboard policy. Kaufman had an American policy which named it as assured and also named Republic as an additional insured; Republic was added to an existing policy at the instance of Kaufman and pursuant to the terms, or supposed terms, of paragraph 11 of the agreement. Kaufman had in its employment as an extra said Whaley who was injured on February 28, 1952, while in the performance of her duties as an employee of Kaufman. She received workmen's compensation from Kaufman's compensation carrier, Associated Indemnity Corporation (hereinafter designated as Associated), and then sued Republic as a third party tort feasor, obtaining a judgment for $4,443.70, upon which Associated fastened a lien for compensation payments made by it exceeding the amount of the judgment. The action was defended by both American and Seaboard under an agreement that same should be done without prejudice to their respective rights and obligations. After judgment was rendered American paid half of same to Associated and called upon Seaboard to discharge the other half. It having declined to do so, this action was brought for declaratory relief. The court held the two insurers equally liable to pay the judgment and obligated to prorate the loss equally between them, and judgment was awarded in favor of cross-defendant Associated against Seaboard for the sum of $2,221.85, representing half of the Whaley judgment. Seaboard appeals.

Appellant contends that it is not liable for any portion of the judgment because Kaufman had agreed to indemnify Re-

public against such a loss as the one in question and to that end had caused American to add Republic to its existing liability policy as an additional insured. Inferentially the argument is that Republic thereby acquired a right to collect from Kaufman anything it might pay upon the judgment, hence its insurer after discharging the debt would have a right of subrogation against Kaufman and its insurer, American, and therefore American must bear and discharge the entire obligation.

If it be assumed that Republic had indemnity against the Whaley judgment (a matter later discussed), the subrogation doctrine of *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 429 [296 P.2d 801], would become applicable. That decision rejected the view, expressed in certain decisions of district courts of appeal, that there is no primary and secondary liability in the law of torts in California and held that, as between master and servant and their respective insurers, the master has a right of indemnification against the servant who has negligently caused an injury for which the master has had to pay and that principles of subrogation afford this same right to the master's insurer against that of the servant. The court said, at page 428 : "Where a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employe, the employer may recoup his loss in an action against the negligent employe [citations]; that is, as between employer and employe in such a situation, the obligation of the employe is primary and that of the employer secondary. Respondents cite *Consolidated Shippers, Inc.* v. *Pacific Emp. Ins. Co.* (1941), 45 Cal.App.2d 288, 293 [114 P.2d 34]; *Air Transport Mfg. Co.* v. *Employers' Liab. Assur. Corp.* (1949), 91 Cal. App.2d 129, 132 [204 P.2d 647]; *Employers Liab. Assur. Corp.* v. *Pacific Emp. Ins. Co.* (1951), 102 Cal.App.2d 188, 192 [227 P.2d 53]; and *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co.* (1955), 130 Cal.App.2d 158, 165-166 [278 P.2d 493], as supporting a contrary view; such cases are broadly distinguishable on their facts but it would unduly extend this opinion and serve no useful purpose to individually discuss and differentiate them as any implications therein contrary to the long established rule above stated must be deemed disapproved."

The rationale of the ruling is plain. ■ The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements

are not with each other. See *Offer* v. *Superior Court,* 194 Cal. 114, 118 [228 P. 11] ; *Fireman's etc. Co.* v. *Palatine Ins. Co.,* 150 Cal. 252, 256 [88 P. 907]. Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders. The Minnesota Supreme Court, dealing with policies covering two insured persons whose liability for an accident was primary and secondary between themselves, said in *Commercial Casualty Ins. Co.* v. *Hartford Acc. & Ind. Co.,* 190 Min. 528 [252 N.W. 434, 435] : "The two contracts of insurance and their interpretation must be the factual basis of decision. But there was no contract and so no contractual relation between the insurers. Neither was beneficiary of the other's contract. Neither having any contract right against the other, but both being under contractual obligations in respect to the same risk, it remains only to determine the respective equities. If they are concurrently liable for the same risk, it is but obvious equity that there should be contribution. Equally plain it is that, if the one paying the whole loss is primarily liable, and the other obligated only secondarily and not otherwise, there should be no contribution. In such case, the position of the defendant is the stronger, and there can be no recovery." ▮▮▮ The principle of equitable subrogation overrides the terms of the insurance policies.

If Republic had a right to indemnification from Kaufman the Continental case, *supra,* would be controlling. The fact that that right arose from agreement rather than tort would be immaterial. ▮▮▮ One who has a superior equity growing out of contract may enforce it by way of subrogation although that contract was made with a third party. (*F. H. Vahlsing, Inc.* v. *Hartford Fire Ins. Co.,* (Tex.Civ.App.) 108 S.W.2d 947, 950; *Standard Acc. Ins. Co.* v. *Pellecchia,* 15 N.J. 162 [104 A.2d 288, 296-297] ; *Consolidated Freightways* v. *Moore,* 38 Wn.2d 427 [229 P.2d 882, 885] ; 6 Appleman on Insurance Law and Practice, § 4051, p. 521; 46 C.J.S. § 1209, pp. 154-155.)

Respondent argues that this rule is inapposite because of the specific terms of the indemnity agreement. In effect counsel contend that Republic (whose negligence gave rise to the Whaley judgment) was not indemnified against its own negligence.

Paragraph 10 of the agreement provides that all equipment, services and facilities furnished to Kaufman by Republic shall be accepted and used by the former at its own risk. Then follows this: "10. . . . You [Kaufman] further agree to and shall indemnify us [Republic] against and shall save us harmless from all loss, cost (including attorney's fees), damage, expense and/or liability suffered or sustained by or imposed upon us by reason of injury, damage to or death of any of our respective employees or of any other person or by reason of damage to or loss or destruction of any property of any third party resulting from your acts or the acts of your agents or employees or arising out of and in connection with the use by you of our premises and/or studio facilities. 11. You agree to carry normal cast insurance. You also agree to carry Workmen's Compensation, comprehensive public liability and property damage insurance with a company or companies and in an amount or amounts satisfactory to us, written in such manner as to protect both you and us against all liability, expense, loss or damage resulting from injury to, or death of, any person or loss, damage, or destruction of any property caused by any act or omission of any of your agents or employees. At our request, you agree to submit evidence of such insurance to us from time to time. We represent that we maintain like public liability and property damage insurance covering any acts or omissions of our employees and we agree to maintain such insurance in force during the time you use our studio facilities hereunder."

It is firmly established in this state that language designed to protect one against his own negligence must be clearly and explicitly to that effect in order to accomplish the desired end. "We epitomize what is there stated, so far as it is here germane and without reference to the authorities cited therein (pp. 594-597): Except where discountenanced by public policy or some statutory inhibition, a party may contract to absolve himself from liability for negligence; the law, however, looks with disfavor on such attempts to avoid liability or secure exemption from one's personal negligence, and construes such provisions strictly against the person relying on them, especially when he is the author of the document; to be sufficient as an exculpatory provision against one's own negligence, the party seeking to rely thereon must select words or terms clearly and explicitly expressing that this was the intent of the parties; and that seemingly broad language will not be isolated from its context and will be read with due

regard to the maxim of strict construction." (*Sproul* v. *Cuddy*, 131 Cal.App.2d 85, 95 [280 P.2d 158].) To the same effect, see *Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App. 2d 578, 594-595 [271 P.2d 122]; *Pacific Indem. Co.* v. *California Elec. Works Ltd.*, 29 Cal.App.2d 260, 274 [84 P.2d 313]; *City of Oakland* v. *Oakland etc. Sch. Dist.*, 141 Cal. App.2d 733, 736 [297 P.2d 752]; *Guy F. Atkinson Co.* v. *Merritt, Chapman, & Scott Corp.*, 126 F.Supp. 406, 408 (D.C. No.Dist.Cal.); *Standard Ins. Co. of N.Y.* v. *Ashland Oil & Refining Co.* (10 Cir.), 186 F.2d 44, 46; 26 Cal.Jur.2d § 14, p. 345; 42 C.J.S. § 12, p. 581.

▮ The language under discussion does not measure up to this standard. The first quoted sentence relates only to acts or omissions of Kaufman or its servants. This is also true of the second sentence of paragraph 11. The last quoted sentence is the one stressed by respondent. It is an agreement to maintain liability insurance "covering any acts or omissions of our employees,"—Republic's own servants. If Republic was to be indemnified against its own wrongdoing there would have been no occasion for this provision or for any agreement to carry this type of insurance. The quoted language is at most "provocative of some doubt" (to borrow the phrasing of *Pacific Indem. Co.* v. *California Elec. Works Ltd., supra*, 29 Cal.App.2d 260, at 274), and hence insufficient to constitute an indemnification against Republic's own negligence. (See *Beale* v. *Joseph Magnin Co., Inc.*, 139 Cal. App.2d 742, 744 [294 P.2d 43].) The question of subrogation thus disappears from the case. (*Cf. Builders & Mfrs. Mut. Cas. Co.* v. *Preferred A. Ins. Co.*, 118 F.2d 118, 121-122.) And the problem becomes one of adjusting the insurers' equities in the light of the "other insurance" provisions of their respective policies.

▮ That of American provides for proration except in circumstances not here pertinent, as follows: "If the insured has other insurance against a loss covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; . . ." The Seaboard policy contains an excess clause as follows: "In the event that there shall be in effect any other good, valid and collectible insurance insuring to the benefit of the insured, or any additional insured hereunder with respect to loss or claim covered hereby, then this insur-

ance shall be excess insurance only, over and above the amount of any such other good, valid and collectible insurance." The limits of the two policies are the same and substantially in excess of the amount of the Whaley judgment.

This case lends itself to solution upon the basis of these policy provisions independently of the equities which in proper cases, as in subrogation instances, override the exact terms of the policies in the interest of substantial justice. The American provision renders it liable for its pro-rata portion of the loss, in this case one-half, and the insured after paying can collect that much and no more from that insurer. It was so held in *Fidelity etc. Co.* v. *Fireman's F.I. Co.*, 38 Cal.App.2d 1, 5 [100 P.2d 364].[2] Hence the policy is to that extent "good, valid and collectible" other insurance within the purview of the Seaboard policy, which in that event protects the insured with excess insurance "over and above the amount of any such other good, valid and collectible insurance,"—namely, to the extent of one-half of the total loss. This same result was reached, through imposing overriding equitable principles, upon consideration of conflicting prorate and excess clauses in *Air etc. Co.* v. *Employers' Liab. etc. Corp.*, 91 Cal.App.2d 129 [204 P.2d 647]; *Peerless Cas. Co.* v. *Continental Cas. Co.*, 144 Cal.App.2d 617, 619-623 [301 P.2d 617]; and *Canadian Indem. Co.* v. *Ohio Farmers Indem. Co.* (Dist.Ct.No.Dist.Cal.), 140 F.Supp. 437, 439.

These considerations leave Seaboard liable for one-half of the Whaley judgment and the trial court so ruled. However, the findings contain certain erroneous conclusions which should be stricken in aid of affirmance. In paragraph V it is said: "[T]hat Seaboard's liability policy in behalf of Republic was intended to and did cover only Republic's liability on matters pertaining to its own activities as distinguished from any activities it had in, under, or by reason of Kaufman's employee Frances L. Whaley"; said sentence is stricken from the findings. Finding IX is modified by adding to the

[2]The holding does not rest upon the fact that both policies there involved had pro-rata "other insurance" provisions, but upon the express agreement between insurer and insured that the former would pay a specific portion of the loss and no more in the event of the existence of other insurance. "Each of the contracts of insurance is entirely separate and independent of all the others. Each insurer is liable directly to the insured for its proportion of the loss, and the insured can recover from any insurer only such proportion of the loss as it is liable for under the terms of its policy." (*Fireman's etc. Co.* v. *Palatine Ins. Co.*, 150 Cal. 252, 256 [88 P. 907].)

first subparagraph thereof the words "unless caused by negligence of said Republic or its agents or servants"; also by adding to the second subparagraph thereof the words "unless caused by negligence of Republic or its agents or servants."

If it be said that the views herein expressed depart from the theory upon which the case was tried the answer is that the rule confining the parties upon appeal to the theory pursued below does not apply to a question which is one of law only (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 341 [303 P.2d 738]), and that an appellate court is never bound by concessions of counsel as to the applicable law (*Desny* v. *Wilder,* 46 Cal.2d 715, 729 [299 P.2d 257]) or by the interpretation of documents made by the trial court upon the basis of the terms of the written instrument without the aid of other evidence (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 429-430). There was no evidence at bar except the written indemnity agreement; other matters were covered by admissions of the pleadings or the briefs.

Judgment affirmed.

Fox, Acting P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 6, 1958.