[Civ. No. 68150. Second Dist., Div. Four. Sept. 23, 1983.]

FRANK FERRELL, Plaintiff and Appellant, v.
SOUTHERN NEVADA OFF-ROAD ENTHUSIASTS, LTD., et al.,
Defendants and Respondents.

COUNSEL

Hurley & Grassini and Ronald Wrinkle for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Duane C. Musfelt and Jeffrey R. Kurtock for Defendants and Respondents.

## OPINION

**McCLOSKY, Acting P. J.**—Plaintiff Frank Ferrell appeals from a judgment entered against him and in favor of defendants Southern Nevada Off-Road Enthusiasts (SNORE) and Walter Lott pursuant to the provisions of Code of Civil Procedure section 437c after the trial court granted defendants' motion for a summary judgment.

### FACTS

According to the complaint, plaintiff Frank Ferrell was severely burned and injured while driving in a dune buggy race which took place on government owned land in Nevada. Prior to the race, plaintiff Ferrell, as a condition of entering the race, signed a document entitled "RELEASE OF LIABILITY."[1] During the race, Ferrell's vehicle collided with a vehicle of a spectator parked, along with other spectator vehicles, on a race course designed, set up, maintained and operated by defendants without barriers, warnings, markings, instructions, supervision or any other measures to prevent the very type accident which occurred in this case. The trial court granted defendants' motion for summary judgment on the ground that plaintiff Frank Ferrell presented no triable issue of fact and that SNORE and Lott had shown by admissible evidence and reasonable inferences that Frank Ferrell's claims were without merit.

### CONTENTIONS

Plaintiff contends as follows: (I) The SNORE form does not say what defendants contend it says and therefore cannot be the basis for summary judgment. (II) Language of indemnity is treated differently under California Law, as to its exculpatory effect, than language of release. (III) Agreements

---

[1]We here set forth the document in its entirety except for the signature lines.
"RELEASE OF LIABILITY
"ENTRANTS ARE REQUIRED TO READ AND SIGN THE FOLLOWING DECLARATION
"In consideration of the acceptance of this entry or of my being permitted to take part in this event, I, for myself, my heirs, executors, administrators, successors and assignes [sic] agree to save harmless and keep indemnified SNORE, Ltd., it's [sic] individual members and their respective agents, officers, officials, servants and representatives, the owner, curators, lessors, agencies, (including, but not limited to Federal, State, County and City), or managers of any lands upon which this event takes place from and against all actions, claims, costs and expenses and demands in respect of death, injury, loss of or damage to my person or property, howsoever caused, arising out of or in connection with my entry or my participation in this event, and not withstanding that the same may have been contributed, to, occasioned by, or directly caused by the negligence of the said bodies, their agents, officials, servants or representatives. I declare that the drivers possess the standard of competance [sic] necessary and are physically fit for an event of the type to which this entry relates and the vehicle entered is suitable and road worthy for the event."

purporting to release a party from his future negligence are strictly construed and will not exculpate that party unless the words of the agreement clearly and explicitly state that intent. (IV) It has been expressly held that it is an issue of fact whether plaintiff actually intended to discharge any future claim he may have for the negligence of the defendants and therefore such an issue is not properly resolved on summary judgment. (V) There is a triable issue of fact as to the understanding of the parties in the present case. The moving papers failed to establish as a matter of law that either of the two defendants were parties to the contract.

DISCUSSION

I

The purpose of the summary judgment procedure under Code of Civil Procedure section 437c is to expedite litigation by avoiding needless trials. (*Truslow* v. *Woodruff* (1967) 252 Cal.App.2d 158 [60 Cal.Rptr. 304].) A summary judgment must, and may only, be properly granted where no material triable issue of fact exists and the moving party's affidavits set forth sufficient facts to sustain a judgment in its favor. (*City of Torrance* v. *Castner* (1975) 46 Cal.App.3d 76 [120 Cal.Rptr. 23]; Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) When no triable issue of fact exists and the contentions of the parties turn upon an issue of law, summary judgment is proper. (*Burke Concrete Accessories, Inc.* v. *Superior Court* (1970) 8 Cal.App.3d 773 [87 Cal.Rptr. 619].) Inasmuch as summary judgment denies the right of an adverse party to a full trial of the case, it should be used with caution. Any doubts as to the propriety of granting such motion should be resolved against the moving party. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

II

Respondent asserts: "Ferrell's negligence action, including the effect of the Release of Liability, is controlled by Nevada Law. The release was entered into in Nevada, the race took place in Nevada, and plaintiff's injuries occurred in Nevada. See 4 Witkin, *Summary of California Law, Torts,* § 191, p. 2479 (8th ed. 1974). Because of the paucity of decisions in Nevada on this particular issue, the superior court relied on cases involving race car driver releases from many jurisdictions. [¶] Counsel are not aware of any Nevada cases dealing with exculpatory contracts as applied to race car drivers. Nevertheless, a conventional post-accident settlement

release cannot be set aside absent an allegation of fraud, duress or mistake. *Jones* v. *Revell,* 92 Nev. 635, 555 P.2d 1327 (1976); *Igert* v. *State Farm Mut. Automobile Ins. Co.,* 91 Nev. 240, 533 P.2d 1365 (1975)."

Respondent then goes on to state that "[e]very other jurisdiction in which a race car driver signed a contract plainly and conspicuously exculpating the organizers from liability from negligence has held the exculpatory agreements valid. . . .

"The only case in which an exculpatory agreement involving a race track has not been upheld is *Celli* v. *Sports Car Club of America, Inc.* 29 Cal. App.3d 511 (1972)."

Evidence Code section 311 provides that if the law of a state other than this state is applicable and such law cannot be determined, the court may, as the ends of justice require, either: "(a) Apply the law of this state if the court can do so consistently with the Constitution of the United States and the Constitution of this state; or [¶] (b) Dismiss the action without prejudice or, in the case of a reviewing court, remand the case to the trial court with directions to dismiss the action without prejudice." (See also *Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 453-454 [289 P.2d 466].) ■ Since we cannot determine the law of Nevada as to agreements purporting to exculpate a party from its liability for the results of its future negligence or other tortious conduct, we deem that the ends of justice are best served by applying the law of California in that area as it appears to be in accord with the weight of authority of the United States on this subject.

■ We start with the principle that "[i]n construing a contract, the question whether an uncertainty or ambiguity exists is one of law, and the lower court's finding on [the] issue is not binding on appeal. [Citation.]" (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13].) Here, we examine whether a contractual clause is clear and explicit. We, therefore, proceed to examine it anew.

A reading of the case law on the subject reveals a strong and growing distaste in our state and in our nation for exculpatory release provisions releasing a tortfeasor from liability for his or her future negligence or misconduct. (See *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693], the many cases gathered therein and *Henrioulle* v. *Marin Ventures, Inc.* (1978) 20 Cal.3d 512 [143 Cal.Rptr. 247, 573 P.2d 465].)

Further, regardless of whether a party seeking an exculpatory release or indemnification for its future tortious conduct engaged in a business involv-

ing the public interest, our state follows the weight of authority of the United States in holding that where the language of such instrument was prepared entirely by the party relying on it, words *clearly and explicitly* expressing that intent of the parties are required. (*Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 519-520 [105 Cal.Rptr. 904] and the cases cited therein; italics added.)

In *Sproul* v. *Cuddy* (1955) 131 Cal.App.2d 85, 95 [280 P.2d 158], the court of appeal reached a result rejecting the purported effect of an exculpatory clause as to a rental agreement for a defective walker which provided that the licensor ". . . will in no way be responsible for damages resulting from the use thereof." (*Id.,* at p. 93.) The *Sproul* court said at page 95: "Except where discountenanced by public policy or some statutory inhibition, a party may contract to absolve himself from liability for negligence; the law, however, looks with disfavor on such attempts to avoid liability or secure exemption from one's personal negligence, and construes such provisions strictly against the person relying on them, especially when he is the author of the document; to be sufficient as an exculpatory provision against one's own negligence, *the party seeking to rely thereon must select words or terms clearly and explicitly expressing that this was the intent of the parties*; and that seemingly broad language will not be isolated from its context and will be read with due regard to the maxim of strict construction." (Italics added.)

In *Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d 511, defendants, operators of track facilities, sponsored an automobile race. Spectators who purchased special pit passes were allowed in the paddock and pit areas, with no protection except a row of parked automobiles. Defendants were aware of accidents resulting from cars going out of control, and were aware that the particular driver involved in the present accident had already had four spins and a crash. Nevertheless, defendants, with authority to disqualify contestants lacking skill, did not disqualify him; and, with knowledge of safety precautions used on other tracks (e.g., ditch, pit wall, strong barriers), did not employ them. While making a practice run, that driver's vehicle went out of control, killing him and injuring plaintiffs who were in the pit area. The principal defense was an exculpatory release agreement in the pit passes. Judgment for plaintiffs on jury verdicts was affirmed by the appellate court. The general clause releasing from liability for injuries "resulting from any accident or other occurrence" did not cover liability for active negligence which consisted of a negligent omission; the failure to provide a barrier or other protection for persons admitted to the dangerous area. (*Celli* v. *Sports Car Club of America, Inc., supra,* 29

Cal.App.3d at p. 519; 1 Witkin, Summary of Cal. Law (8th ed. 1982 supp.) Contracts, § 491, p. 113.)

The document involved in *Celli* was headed and entitled:

"PIT PASS

"Deposit at gate; not good if detached

"RELEASE OF LIABILITY AND AGREEMENT"

In pertinent part, it provided that the holder of the pass "releases, remises and forever discharges SAN FRANCISCO REGION, SPORTS CAR CLUB OF AMERICA, its officers, governors, members, agents and employees and all participants in the above mentioned event, and any individual, group or association or corporation, if any, sponsoring the event or owning property on which the event is held, and each of them, and the heirs assigns, administrators and executors of each of them of and from any and every claim, demand, action or right of action whatsoever kind or nature, in law or in equity, arising from or by reason of any injury to or death of any person, or any damage to or destruction of property resulting or alleged to result from or arise out of any accident or other occurrence during or in connection with the foregoing event and/or any practice session in connection therewith, and/or any use of the course and/or facilities provided for such event." (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d at p. 525.)

The *Celli* court explained that "[t]he well established rule in this state is that where the language of an instrument purporting to exculpate one of the parties for its future negligence, was prepared entirely by the party relying on it, words clearly and explicitly expressing that this was the intent of the parties are required. (*Basin Oil Co.* v. *Baash-Ross Tool Co.,* 125 Cal.App.2d 578, 593 [271 P.2d 122]; *Butt* v. *Bertola,* 110 Cal.App.2d 128, 138-140 [242 P.2d 32]; *Barkett* v. *Brucato,* 122 Cal.App.2d 264, 275-278 [264 P.2d 978]; *Sproul* v. *Cuddy,* 131 Cal.App.2d 85, 95 [280 P.2d 158])." (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d at p. 518.)

It then held that the exculpatory language in the release involved was of no avail, even though it purported to release and forever discharge the releasees "of and from any and every claim, demand, action or right of action whatsoever kind or nature, in law or in equity arising from or by reason of any injury to or death of any person, . . . resulting or alleged to

result from or arise out of any accident or other occurrence during or in connection with the foregoing event . . . ." (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d at p. 525.)

The *Celli* court based its holding on the fact that the release therein did not clearly and expressly state that it was releasing those defendants from liability for their own negligence, the release was drawn by defendants, and the uncontradicted evidence indicated that plaintiff's injuries were proximately caused by defendants' active negligence in participating as they did in the events. (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d at pp. 518-520.)

It reiterated the rule that where the language of an instrument purporting to exculpate a party from liability for its future negligence was prepared entirely by the party relying on it, words clearly and explicitly expressing such intent of the parties are required. (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d at pp. 519-520.)

Respondents imply that the *Celli* decision was at least partly based on the fact that the exculpatory language in the case was printed in six-point type. The *Celli* court, however, made clear that it was *not* basing its decision on that fact, although it discussed it. As it explained on page 521 of its opinion: "We conclude, therefore, that the release agreements did not absolve defendants from the consequences of their own negligence as the express words used did not specifically and clearly declare this result. *Furthermore, although we need not decide the issue, we question whether public policy in this state would permit judicial enforcement of a provision printed in such small type and designed to permit a tortfeasor to shift the risk of the injury to the victim even where the release is sufficient to encompass defendants' own negligence* (*Tunkl* v. *Regents of University of California,* 60 Cal.2d 92, 97 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]). We note that the statutes pertaining to retail installment sales (Civ. Code, § 1803.1) and parking lots (Civ. Code, § 1630) require at least eight-point type." (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d 511; italics added.)

" 'The applicable principles are (a) the agreement for indemnification [and for exculpation] must be strictly construed against the indemnitee, and (b) in order to include acts amounting to active or affirmative negligence, the indemnity [or exculpatory] provision must be clear, positive and specific to that effect. [Citations.]' " (*Herman Christensen & Sons, Inc.* v. *Paris Plastering Co.* (1976) 61 Cal.App.3d 237, 246 [132 Cal.Rptr. 86].)

We do not view *Celli* in the limited light of its being a race track case. It merely expresses and reiterates the rule of the long and unbroken line of California cases beginning with *Vinnell Co.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411, 414-416 [340 P.2d 604], in accordance with the weight of authority that a party may not be exculpated or indemnified from liability for its own future negligence without using language that it is both clear and explicit in expressing the intention of the parties in that regard. (See also *Burlingame Motor Co.* v. *Peninsula Activities, Inc.* (1971) 15 Cal.App.3d 656, 665 [93 Cal.Rptr. 376]; *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].)

That rule is not, and should not be, limited solely to the concept of releasing or indemnifying the releasee or indemnitee for its own negligence. Rather, the agreement must clearly, explicitly and comprehensibly express the intent of the signators to all of its parts. (Compare, e.g., the discussion of the *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413 [105 Cal.Rptr. 725], three-classification-of-indemnity agreements occurring in the cases of *Herman Christensen & Sons Inc.* v. *Paris Plastering Co., supra*, 61 Cal.App.3d 237 and *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 672-674 [151 Cal.Rptr. 399].)

■ We, therefore, conclude that to be effective, an agreement which purports to release, indemnify or exculpate the party who prepared it from liability for that party's own negligence or tortious conduct must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.

The efficacy of this salutory rule is especially applicable in the case before us in which the adhesive agreement was prepared by one of the purported releasee-indemnitees, and was presented on a take-it-or-leave-it basis as a condition of being allowed to enter the race. This was done in the context of the economic setting of the parties, where they were of unequal bargaining strength, and the indemnitees or releasees seek to be released, indemnified and exculpated from their own negligence, without limitation as to whether that negligence be active or passive.

"*Rossmoor* tells us that '[p]assive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. [Citations.] Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge

or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform.' (*Rossmoor, supra,* 13 Cal.3d 622, 629.)

" 'The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law.' (*Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 625 [100 Cal.Rptr. 1, 493 P.2d 465].) Ordinarily, the issue is a question of fact, to be determined by the trier of fact; it is reviewable on appeal by the substantial evidence standard. 'Whether conduct constitutes active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the trier of fact . . . .' (*Rossmoor, supra,* 13 Cal.3d 622, 629.)" (See *Rodriguez* v. *McDonnell Douglas Corp., supra,* 87 Cal.App.3d 626, 675.) It is thus not a matter for determination on a motion for summary judgment in this case.

■ Examining the "exculpatory" language used in the case at bench in the light of the foregoing principles convinces us that the "Agreement" used does not clearly and explicitly accomplish the exculpation or indemnity respondents seek from its language.

The only time the word "release" appears in the entire document is in its title. Thereafter, the only language which could possibly be construed as exculpatory, releasing or indemnifying appears in a convoluted 147-word sentence. Although over 55 percent the length of Lincoln's entire Gettysburg Address, that sentence in the document contains no releasing language. It never mentions words such as "release," "remise," "discharge," "waive," or the like.

Reading the entire document leads to the inescapable conclusion that it does not *clearly,* explicitly and comprehensibly set forth to an ordinary person untrained in the law that the intent and effect of the document is to release his claims for his own personal injuries and to indemnify the defendants from and against liability to others which might occur in the future as a proximate result of the negligence of those defendants who are the respondents here.

Those defendants urge that "no special language is required in an exculpatory contract." The fact that that is true does not excuse the requirement of clear and explicit language clearly conveying to the prospective-releasor that he or she is releasing the releasees from liability for the releasor's personal injuries proximately caused by the negligence of the releasees. If exculpation is sought, the agreement must provide for it in clear, explicit

and comprehensible language. This agreement does not accomplish that result.

Defendants, relying on *Palmquist* v. *Mercer* (1954) 43 Cal.2d 92, 98 [272 P.2d 26], urge that because plaintiff was not prevented from reading the document before he signed it, his asserted misunderstanding of it, as long as it is plainly and clearly drafted, is of no effect. That reliance on *Palmquist* is misplaced for two reasons. First, the document is not plainly and clearly drafted. Second, as was noted in *Celli* at page 520, the *Palmquist* court "directed its opinion *solely to the question of fraud* and never even raised the question of whether a general release can exculpate a tortfeasor from [his] *active* negligence." (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d 511; italics added.)

Since we reverse for the reasons above stated, we need not, and do not, address plaintiff's other contentions.

The judgment is reversed.

Amerian, J., and Schneider, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 16, 1983. Richardson, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.