[Civ. No. 22535. Second Dist., Div. One. Feb. 4, 1958.]

RAY RACKLIFF, Respondent, v. CORONET CONSTRUC-
TION COMPANY, INC. (a Corporation), Appellant.

Bromberg & Cravitz and Bennett J. Cravitz for Appellant.

Gross & Svenson and Harold W. Svenson for Respondent.

WHITE, P. J.—Defendant appeals from a $5,000 judgment in favor of plaintiff in his action for damages arising out of the bailment of two DW-21s, rubber tired motor scrapers, valued at about $30,000 each. The agreement between the parties was admittedly a "bare rental" at $2,000·monthly for each of the scrapers beginning June 13, 1955, defendant to hire and pay certain operators, and to pay plaintiff's oiler for four

hours daily for oiling the machines. After the end of the first month, $4,000 rent was paid by defendant and the use of the scrapers was continued.

It is alleged in the complaint and found to be true that "by the terms of said oral agreement of hire . . . said motor scrapers were not to be used in rock . . . and were to be returned to plaintiff at his Lincoln and Manchester Yard in the same condition in which they were received, reasonable wear and tear excepted . . .''; that defendant ''used said motor scrapers continuously, commencing on June 13, 1955, and continuing to and including July 26, 1955, and that on July 27, 1955, defendant . . . notified plaintiff that it no longer needed said motor scrapers and . . . tendered to plaintiff a check for the rental thereof in the approximate amount of $1,300 as rental for the period from July 13, 1955 through July 26, 1955, and . . . told plaintiff the location of said motor scrapers and demanded that plaintiff call for them''; that plaintiff refused said tender and demanded that the motor scrapers be returned to his yard ''in as good condition and repair as when received by the defendant . . . reasonable wear and tear excepted . . . that defendant . . . failed and refused to comply with any and all of said demands and that plaintiff took possession of said motor scrapers on or about August 1, 1955, caused them to be repaired on the first, second and third days of August, 1955, and that plaintiff returned said motor scrapers to its own use and service on August 4, 1955''; that plaintiff paid $80 for transporting said scrapers to its own yard; that the agreed rental from July 13th to August 1st was $2,451.60; that the reasonable value of the use of said motor scrapers for the period from August 1st to August 3d, inclusive, was the further sum of $387.10; that defendant ''during the period July 13, 1955 to July 26, 1955 did not take proper care of said motor scrapers and used the same on rock with the result that the water pumps thereon were damaged, the head on one of the two motor scrapers was cracked . . . the seals and gaskets on both motor scrapers were damaged, the cutting bits were completely worn down and ruined, the tires were badly cut and torn, the rotor bits were broken and worn, the motors were damaged, the step on one motor scraper was bent alongside the machine, the belly pan on one motor scraper was bent up to the crankcase, the engines were difficult to start and missed, the water line on one motor scraper was broken, both motor scrapers built up

pressure in the cooling system, the lock washers were broken on top of the transmissions, and other damage was done.''

Judgment was awarded for the rental from July 13th to August 1st, $2,451.60, with interest thereon from August 1, 1955; the cost of returning said scrapers to plaintiff's yard which was $80; and the reasonable cost of repairing the damage found to have been done to them by plaintiff, $2,468.40; making the total amount of the judgment $5,000.

▇ Appellant contends that there is no substantial evidence to support the findings that the bailed property was not to be used in rocky ground, the amount of the court's award for damage to the scrapers, or the cost of cartage.

The record discloses that plaintiff testified that before delivering the machines he went to the job site and told the superintendent on the job that he did not want the machines worked in rock and the superintendent said he would not work the machines in rock; and that on the same day he talked with Mr. Cravitz, the president of defendant corporation, and told him the equipment was not to be used in rock; later he went to the job and saw the equipment working in rock, told the foreman he should not work the machines in rock and the foreman replied that they were only stripping some dirt off so the rock could be blasted; that later when he went to the job the equipment was again working in rock, he spoke to the superintendent who removed the equipment into dirt. Chester Thompson, the operator of one of the machines, testified that plaintiff came to the job on one occasion and told him ''either to stay out of rock or take it down and park it,'' that the foreman then directed him to work on the lower road, and that after plaintiff left the equipment was returned to the rock. That testimony is sufficient to support the finding that the agreement was not to use the scrapers in rock, and for the purposes of this appeal evidence in conflict with it is of no concern.

▇ The finding that ''by reason of the damage done'' to said scrapers ''plaintiff was damaged in the sum of $2,468.40'' is supported by evidence that repairs costing $4,044.28 were made immediately after the plaintiff repossessed the scrapers included items ranging in amount from ''welding supplies $12.00'' to ''2 tires damaged beyond repair and excessive wear on remaining tires $2,501.30.'' The record also includes testimony that some of the needed repairs were not then made or included in said $4,044.28. Under the facts and circumstances

of the instant action, the amount of damages so found—$2,468.40—does not appear to be unreasonable or arbitrary.

There is in the record some testimony that the reasonable cost of moving said scrapers from the defendant's job to the plaintiff's yard was $80, and that defendant agreed to return the equipment to plaintiff's yard.

 Appellant urges that the judgment must be reversed because "there was a waiver by plaintiff of the alleged restriction prohibiting the use of the bailed property in rocky ground." In support of this contention it relies upon the fact that plaintiff insisted upon defendant's hiring of certain operators for the machines and cites some testimony to the effect that plaintiff knew the machines were working in rock and failed to repossess them. The operators were on defendant's payroll, taking their orders from defendant, and were not the agents of plaintiff. Their knowledge was not imputed to plaintiff. When plaintiff first became aware that the scrapers were being used in rock, he could have ended the bailment. (Civ. Code, § 1930.) Instead, he insisted that defendant remove them from the rock, which was done. Usually waiver is a question of fact. (*Lyons* v. *Brunswick-Balke etc. Co.*, 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173].) In the instant action, plaintiff's leaving the scrapers with defendant did not waive, as a matter of law, the defendant's use of the scrapers in rock thereafter.

The finding that defendant did agree not to use the equipment in rock and that defendant broke that agreement causing damage to the equipment is supported by substantial evidence. Defendant's statement that a bailee is not an insurer of the equipment and owes no duty beyond ordinary care, therefore, is not applicable to the facts now engaging our attention.

Damage to plaintiff's equipment caused by defendant's breach of its expressed agreement not to use said equipment in rock is sought and awarded. The cases ex delicto cited and relied upon by appellant are not determinative of any question presented to us herein.

 Appellant urges that the judgment is erroneous because it includes an "award of rental after bailment terminated." Appellant's argument under this heading, however, is that since the court found that "on July 27, 1955, defendant . . . notified plaintiff that it no longer needed said motor scrapers and that defendant . . . tendered to plaintiff a check for the rental . . . through July 26, 1955 and . . . told plaintiff

the location of said motor scrapers and demanded that plaintiff call for them," it must be concluded that the bailment ended July 26, 1955.

Respondent states in his reply brief that the bailment was one from month to month and would not have expired until August 12th, except for the fact that plaintiff retook possession of the equipment on August 1st; that the period of the bailment beyond the month paid for by defendant is from and including July 13th to and including July 31st, or 19 days at the daily rate of $129.03, or $2,451.60, the amount awarded by the judgment.

The real question, therefore, is whether the bailment was terminated by defendant's notice to plaintiff or by plaintiff's taking possession of the bailed property. From testimony given by the broker and by plaintiff, it could be implied that the rental was to be "from month to month" or "on a monthly basis." Also in the record there is testimony from which it might be implied that the bailment was for the "duration of the job." According to testimony of defendant's president, other scrapers were hired to complete the job late in August.

In the instant action, the agreement between the parties to a bailment included the provision that the bailee would return the property to bailor's premises. We are satisfied that the parties originally intended the bailment to continue until defendant's return of the bailed scrapers to plaintiff's yard. ■ Regardless of its expressed terms, any contract may be terminated at any time by the mutual consent of the parties. ■ Respondent's repossession of the motor scrapers, after appellant's demand that he do so, is evidence of the mutual agreement of the parties that the bailment should end at the time of the bailor's repossession. The court below did not err in awarding rent for the scrapers to and including the day of such repossession.

■ Appellant also urges that the judgment is erroneous and must be reversed because it includes rental for time during which the scrapers were being repaired. The judgment does not include rent from August 1st to 3d when plaintiff was repairing the scrapers after repossessing them and before returning them to his own yard. In this connection appellant relies upon the bailor's implied warranty that the scrapers were in condition fit for the purpose for which they were hired. They refer to the plaintiff's testimony on cross-

examination that he recalled "certain defects in the wheels of the equipment"; that he knew about such defect prior to renting to defendant; that he did not tell defendant about it; that "there was about an inch and a half crack in front of the front wheels, it would probably run for ten years on normal conditions or it would probably breach in a month or two"; that he had informed the Shepherd people of this defect; that "you never replace a wheel until it is completely gone, that is a factory repair"; that his agreement with the Shepherd people was "to run this equipment until it broke down" and "then they would go out and replace it"; and other evidence that the equipment "did break down" on the defendant's job and "was under repair part of July 11, all of the 12th and part of the 13th of July." The facts that the scraper was used by defendant for 28 days before the beginning of such "down-time" and that part of said use was in rock contrary to the terms of the bailment supports the implied finding that the "defect" had not caused the need for such repairs.

*McNeal* v. *Greenberg,* 40 Cal.2d 740 [255 P.2d 810], relied upon by appellant, involved the rental of a tractor. A directed verdict for defendant-bailor was reversed for the reason that the failure of the tractor's brakes shortly after its delivery to the bailee "is sufficient basis for an inference that the brakes were defective at the time of the delivery of the vehicle and that a reasonable inspection would have disclosed the defect" (page 744) and the jury should have been allowed to weigh the evidence. The McNeal case has no application to the facts of the instant action.

In the case at bar it is not disputed that on or about the 22d day of July, defendant paid the full rent on both scrapers for the first month ending July 12th, and that defendant did not report any break-down or need for repairs to the plaintiff.

Assuming that the repairs made by defendant on July 11, 12 and 13 were needed because of a defect in the scraper and that plaintiff should have made them, and assuming further that the facts would have justified defendant's deduction of the "down-time" from the first month's rent, under the circumstances of this action defendant's proceeding to repair the scraper without first giving plaintiff the chance to do it, and its payment of the full rent for the first month of the bailment,

is evidence that it waived its right, if any, to be reimbursed for such "down-time."

The judgment is affirmed.

Fourt, J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied March 3, 1958.

---

*Assigned by Chairman of Judicial Council.