[No. A015135. First Dist., Div. Five. July 6, 1984.]

Conservatorship of the Estate of ROBERT RUDOLPH LINK.
MARIE A. ROBINSON, as Conservator, etc., Plaintiff and Appellant, v.
NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC.,
et al., Defendants and Respondents.

**COUNSEL**

H.R. Lloyd, Jr., Patricia M. Leary and Hoge, Fenton, Jones & Appel for Plaintiff and Appellant.

Yale W. Rohlff and Owen, Melbye & Rohlff for Defendant and Respondent.

**OPINION**

**LOW, P. J.—** We hold that a purported release agreement required as a condition of entry to a racing event is unenforceable because it is printed in five-and-one-half-point type and cannot be easily read by persons of ordinary vision. Contained in two documents, a sign-in sheet and pit pass, the purported release is also unenforceable because it is unclear, not explicit and so lengthy and convoluted that it is not comprehensible.

Marie A. Robinson, as conservator for Robert Rudolph Link, appeals from a summary judgment granted by the Santa Clara County Superior Court in favor of defendants, National Association for Stock Car Auto Racing, Inc. (NASCAR), Bob Barkheimer Associates, Inc., and Ken Clapp.

Defendants' motion for summary judgment maintained that they were not liable for Link's injuries suffered in an accident at an automobile race on the ground, inter alia, that Link released defendants from liability for negligence. Link, a racing pit crewman, worked for Roy Morgan, a participant in a racing vehicle event. The event was sponsored by Bob Barkheimer Associates, Inc., and sanctioned by NASCAR. Ken Clapp was an owner and director of Bob Barkheimer Associates, Inc. To gain admittance to an area of the race track restricted from the general public, Link was required to sign a sign-in sheet, sign and obtain a pit pass, and pay $7. He received $15,000 insurance for participant accident coverage. The sign-in sheet was prefaced with a document entitled "THIS IS A RELEASE OF LIABILITY/Request and Release of Liability." Much of the document is printed in five-and-one-half-point type; the document is set forth, in full, in the attached "Appendix." It provides in part:

"Each of the undersigned hereby request permission to enter upon the premises . . . .

"We each have inspected the track premises, know the risks and dangers inherent in entering the premises and participating in, observing the qualifying, and practicing for motor racing events held on race premises, realize that conditions may become more hazardous while each of us are on the premises, that unanticipated and unexpected dangers may arise during said events. We each enter the premises voluntarily and assume every risk for loss, damage or injury . . . .

"[E]ach of the undersigned, for himself, his heirs, next of kin, personal representatives and assigns hereby RELEASES, REMISES AND FOREVER DISCHARGES AND AGREES TO SAVE AND HOLD HARMLESS AND INDEMNIFY NASCAR AND . . . THE PROMOTERS . . . FROM ALL LIABILITY CLAIMS, DEMANDS, CAUSES OF ACTION AND POSSIBLE CAUSES OF ACTION WHATSOEVER, ARISING OUT OF OR RELATED TO ANY LOSS . . . THAT MAY BE SUSTAINED BY OUR RESPECTIVE . . . NEGLIGENCE . . . ." Link was not given a copy of this document.

The pit pass which Link signed and retained provided, in part, ". . . hereby release Speedway operator, promoter, NASCAR and any other person or persons connected with this race from all liability for personal injury or property damage while preparing, practicing or participating in this race meet. I am not an employee but a contestant and independent contractor competing for prize money under NASCAR rules, regulations, and specifications. I am a duly licensed member of NASCAR, subject to rules and regulations of NASCAR. This permit issued subject to the terms and con-

ditions of 'release' executed by NASCAR members to whom this permit is issued. . . ."

Link did not read either of the documents and did not know he was releasing anyone from liability. When the accident occurred, Link was not in the pit area but was seated on a railing near the quarter-mile track watching the supermodified class race. The area was restricted from the general public but commonly used for observing the races by persons admitted to the pit area. After most of the cars finished the race, Link got off the railing and turned his back to the track. Due to hub failure, a wheel came off the supermodified car driven by Scott Luhdorff and struck and injured Link.

The type of modified and machined hub that failed on the Luhdorff vehicle was not safe for use in supermodified racing and was in violation of NASCAR's "*General Safety Rules* of the 1980 SUPERMODIFIED DIVISION RULES." Before the race began, the Luhdorff vehicle was inspected by NASCAR inspectors; no one informed Luhdorff that the hub violated any rules until about a month after the accident.

## I.

An express release is not enforceable if it is not easily readable. (See *Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 519 [105 Cal.Rptr. 904].) Typeface smaller than eight-point is an unsatisfactory reading medium. (Mellinkoff, *How to Make Contracts Illegible* (1952-1953) 5 Stan.L.Rev. 418, 419.) The five-and-one-half-point print is so small that one would conclude defendants never intended it to be read. Moreover, the lengthy fine print seems calculated to conceal and not to warn the unwary. It is the public policy of this state to posit the risk of negligence on the actor. If there is to be an explicit risk shift, the release agreement must be readable, clear and comprehensible.

Numerous provisions of the Civil Code regulate the typeface size of required contract provisions, generally requiring 8- to 10-point type, often in boldface, with headings required in up to 16-point boldface capital letters.[1]

---

[1]Examples: Civil Code sections 1630 [eight- to ten-point: parking lots]; 1677 [eight-point bold red or ten-point bold: liquidated damages provision in realty purchase contract]; 1803.1 and 1803.2 [eight- to fourteen-point: retail installment sales]; 1812.85 [ten-point bold: health studio services]; 1812.205 and 1812.209 [ten- to sixteen-point bold: seller assisted marketing plan]; 1812.302 and 1812.303 [ten-point bold: membership camping]; 1812.402 [ten-point: disability insurance]; 1861.8 [ten-point bold: innkeepers]; 1916.5 and 1916.7 [ten-point bold: loan of money]; 2924c [twelve- to fourteen-point bold: mortgage default notice]; 2982.5 and 2983.2 [eight- to ten-point bold: automobile sales finance]; 2985.8, 2986.2 and 2986.4 [six- to ten-point bold: vehicle leasing act]; 3052.5 [ten-point bold: service dealer lien].

As a matter of public policy, the typeface size of the crucial language in a release should be no smaller. (See *Celli* v. *Sports Car Club of America, Inc.*, *supra*, 29 Cal.App.3d at p. 521.) The release language is all but illegible to a person of normal vision and in no manner would notify one of the many visually impaired members of society.

Furthermore, the important operative language should be placed in a position which compels notice and must be distinguished from other sections of the document. A crewman should not be required to muddle through complex language to know that valuable, legal rights are being relinquished. (See *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739 [161 Cal.Rptr. 322].) *Miller* held that an insurance policy exclusion clause was unenforceable because it "was not presented in a conspicuous, clear and plain fashion." (*Id.*, at p. 752.) The court noted that the paragraph on exceptions was not distinguished from other sections of the policy, was printed in the same typeface as the remainder of the policy, and was "not likely to attract attention" because the paragraph was placed in the middle of the document. (*Ibid.*) Similarly, *Dorman* v. *International Harvester Co.* (1975) 46 Cal.App.3d 11 [120 Cal.Rptr. 516], held that a disclaimer of the implied warranties of merchantability and fitness for particular purpose in a sales contract did not comply with the provision in California Uniform Commercial Code section 2316, subdivision (2), that the exclusion be "conspicuous." (*Id.*, at pp. 17-19.) The provision was placed near the purchaser's signature and was printed in slightly larger type (*id.*, at p. 18), but the court reasoned that this was not conclusive: " ' "[W]hile there is some slight contrasting set-off, this is not sufficient. *A provision is not conspicuous when there is only a slight contrast* with the balance of the instrument." ' " (*Id.*, at p. 19.)

## II.

In *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309 [195 Cal.Rptr. 90], a document entitled "Release of Liability," purporting to release the defendants from liability for death, personal injury or property damage caused by their negligence in a "convoluted 147-word sentence," was ruled ineffective. It did not meet the "requirement of clear and explicit language clearly conveying to the prospective-releasor that he or she is releasing the releasees from liability for the releasor's personal injuries caused by the [active] negligence of the releasees." (*Id.*, at p. 319.) The plaintiff, a dune buggy driver, signed the purported release as a condition of entering a race. The agreement was prepared by one of the purported releasee-indemnitees and was presented on a take-it-or-leave-it basis as a condition of entering the race.

Any contract of release from negligence must be clear and explicit, free of ambiguity or obscurity, and tell the prospective releasor he or she is releasing the other from liability, including negligence. The language must be comprehensible. Defendants' contract fails to meet these requirements. The agreement was lengthy; the language purporting to exculpate defendants from negligence was contained in the third paragraph in a convoluted 193-word sentence.

The pit pass signed by Link contained general exculpatory language: ". . . hereby release Speedway operator, promoter, NASCAR and any other person or persons connected with this race from all liability for personal injury or property damage while preparing, practicing or participating in this race meet." A release agreement phrased in general language will not provide a release where active negligence is a proximate cause of the injury. (*Celli* v. *Sports Car Club of America, Inc., supra,* 29 Cal.App.3d at p. 519.) Defendants' use of two release agreements framed in different language created an ambiguous, confusing situation which must be resolved against defendants. Therefore, the less exculpatory pit pass is the agreement between the parties. Defendants are not exculpated from active negligence by the language in the pit pass. Defendants' argument that the pit pass was a mere permit subject to the terms of the release contained in the sign-in sheet is contrary to the rule that each word and clause is to be given effect wherever possible unless clearly contrary to the nature of the contract or the parties' intent. (Civ. Code, § 1653; *Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 809 [26 Cal.Rptr. 231].)

We need not reach plaintiff's remaining contentions.

The judgment is reversed.

King, J., and Haning, J., concurred.

## APPENDIX

EXHIBIT F

No 28975

Competitor Permit

THIS IS A RELEASE OF LIABILITY
Request and Release of Liability

SAN JOSE
FAIRGROUNDS

Color . . . . . . . . . . . . . . . . . . , , . . Track . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Code . . . . . . . . . . . . . . . . . Signed on . . . . . . . . . . . . . . . . . . . . 5/15 19

Each of the undersigned hereby request permission to enter upon the premises above described and observe or participate in qualifying, practice and motor racing events sanctioned by the National Association for Stock Car Auto Racing, hereinafter called NASCAR and any of the other sanctioning bodies listed below respectively at said track on this date and race dates succeeding the event scheduled for this date, in accordance with and subject to NASCAR Rules and Regulations, as a driver, mechanic, owner, attendant or otherwise

We each have inspected the track premises, know the risks and dangers inherent in entering the premises and participating in, observing the qualifying and practicing for motor racing events held on Race premises, realize that conditions may become more hazardous while each of us are on the premises, that unanticipated and unexpected dangers may arise during said events. We each enter the premises voluntarily and assume every risk for loss, damage or injury (including death) that any of the undersigned or our respective property brought on the above premises, may sustain while in or en route to, from, into or out of said premises, from any cause whatsoever.

In consideration of receiving permission to enter the premises, being permitted and privileged to participate or assist others participating in said event, as evidenced by the Permit colored, ended and numbered as shown on this form each of the undersigned, for himself, his heirs, next of kin, personal representatives and assigns hereby RELEASES, REMISES AND FOREVER DISCHARGES AND AGREES TO SAVE AND HOLD HARMLESS AND INDEMNIFY NASCAR AND SANCTIONING BODY AND THE PROMOTERS PRESENTING SAID EVENT, THE OWNERS AND LESSEES OF THE PREMISES, THE PARTICIPANTS THEREIN, THE OWNERS, SPONSORS AND MANUFACTURERS OF ALL RACING EQUIPMENT USED IN SAID EVENT AND THE OFFICERS, OFFICIALS, DIRECTORS, AGENTS, EMPLOYEES AND SERVANTS OF ALL OF THEM, OF ANY FROM ALL LIABILITY CLAIMS, DEMANDS, CAUSES OF ACTION AND POSSIBLE CAUSES OF ACTION WHATSOEVER, ARISING OUT OF OR RELATED TO ANY LOSS, DAMAGE OR INJURY (INCLUDING DEATH) THAT MAY BE SUSTAINED BY OUR RESPECTIVE PERSONS OR PROPERTY, THAT MAY OTHERWISE ACCRUE TO ANY OF US OR TO OUR RESPECTIVE HEIRS, NEXT OF KIN OR PERSONAL REPRESENTATIVES WHILE IN, ON, EN ROUTE TO, FROM, OR OUT OF SAID PREMISES FROM ANY CAUSE WHATSOEVER INCLUDING NEGLIGENCE OF ANY OF THE FOREGOING, NASCAR, or sanctioning body and their assigns may use any of our names and photographs including pictures of our cars and photographs taken during said event for publicity purposes including endorsements, in any media before during and after the above event.

This RELEASE shall be binding upon each of the undersigned and their respective distributees, heirs, next of kin and personal representatives.

In signing this REQUEST AND RELEASE each of the undersigned represents that he:
(a) Is not the agent, servant or employee of NASCAR, or sanctioning body, the promoter or any of their agents, officers, servants or employees
(b) Is a participant and an independent contractor, subject to NASCAR, or sanctioning body Rules and Regulations, and assumes and takes all responsibility for all charges, premiums and taxes, if any, payable on any funds that he may receive as a result of his activities, including, without limiting the generality of the foregoing, social security taxes, unemployment insurance taxes, compensation insurance, income taxes and withholding taxes.
(c) Possesses a valid driver's license from his home state
(d) Has read this REQUEST AND RELEASE of Liability, understands it and signs it voluntarily and is of sound mind.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his hand and seal the day and year above written.

| License Number | Competitor Permit No | Entry Fee | Post Entry Fee | Signature |
|---|---|---|---|---|
| **THIS IS A RELEASE OF LIABILITY** | | | | I have seen and read the Request and RELEASE heading this Page. |
| 74 | | 01067 | | Ollie J. Huyton |
| | | 01070 | | Paula Huyton |
| | | 01069 | | |
| | | 227 | | |
| XX | | | | |
| 77 | | 01076 | | Mitch Nbach |
| | | 01074 | | |
| | | 01077 | | Jim Myers |
| | | 0091 | | |
| 20 | | 01080 | | |
| | | 01098 | | |
| | | 1082 | | |
| | | 01087 | | |
| **THIS IS A RELEASE OF LIABILITY** | | | | I have seen and read the Request and RELEASE heading this Page. |
| XX | | 01053 | | |
| 3 | | 01085 | | |
| | | 0198 | | |
| 21 | | 01096 | | |
| | | 01098 | | Cal |
| | | 0104 | | Bill |
| | | 01104 | | |
| 40 | | 1110 | | |
| | | 1112 | | |
| **THIS IS A RELEASE OF LIABILITY** | | | | I have seen and read the Request and RELEASE heading this Page. |
| TOTALS COLLECTED | 21 | $ | $ | Signed in the presence of . . . . . |

CB-11/78