169 Cal.App.3d 1031 (1985)
216 Cal. Rptr. 465
MICHAEL McATEE et al., Plaintiffs and Appellants,
v.
NEWHALL LAND & FARMING CO., INC., et al., Defendants and Respondents.
Docket No. B007733.
Court of Appeals of California, Second District, Division Two.
July 8, 1985.
*1032 COUNSEL
Robert S. Fink for Plaintiffs and Appellants.
Childers & Dickinson, Lenore O. De Vita and Walter K. Childers for Defendants and Respondents.
OPINION
ROTH, P.J.
Appellants Michael McAtee and Jed Seybold were injured while participating in a motorcycle, or "motocross," race sponsored by respondent American Motocross Enterprises, and held on land owned by respondent Newhall Land & Farming Co., Inc. which had been rented to the sponsor for the purpose.
As a condition to entering the race appellants each signed a "Release and Waiver of Liability and Indemnity Agreement," exact copies of which we attach as appendices to this opinion.
Based upon the injuries they suffered, appellants brought suit on the dual theories of general negligence and negligence associated with the ownership or possession of real property. After answering the complaint, respondents moved for summary judgment premised upon the respective release and waiver agreements. That motion was granted, the trial court expressing its reasoning as follows: "THE COURT: How could this be more clear, this release?
*1033 "If I were to agree with your position, Mr. Fink, then no releases would ever be good, and as a practical matter, this business would probably go out of business.
"These people are going to engage in a motocross operation. They signed releases which say that it's dangerous, that there are all sorts of problems and you are likely to get hurt. And the release language is as clear as it could possibly be.
"Now, they try to say it's not a valid release, because the fellow didn't stand in a particular place and say, `Don't go this way. Go that way.'
"That is your case, and I find that release language to be totally unassailable.
"THE COURT: You know, I have only one set of eyes to give to this job, and I routinely refuse to read print that is too small. For example, I almost always routinely refuse to read any Los Angeles City ordinance presented to me in a newspaper printout, because it's too much  I mean, I could read it if I put my eyes to it, but it's too much strain. And I don't do it.
"But this print is in big  not big, but it's in clear, black type that I can look at without any problem whatsoever. I had no problem reading this thing.
"Again, I am looking here to the nature of the activity involved...."
(1) In urging the reasoning employed and the result reached by the trial court were erroneous appellants rely upon the rationales and decisions found in Conservatorship of Link (1984) 158 Cal. App.3d 138 [205 Cal. Rptr. 513], Ferrell v. Southern Nevada Off. Road Enthusiasts, Ltd. (1983) 147 Cal. App.3d 309 [195 Cal. Rptr. 90], and Celli v. Sports Car Club of America, Inc. (1972) 29 Cal. App.3d 511 [105 Cal. Rptr. 904]. We are of the opinion, however, that none of these cases is dispositive of the matter before us, since each turned on critical facts not present here.
So, in Link a purported release agreement required as a condition of entry to a racing event was held unenforceable because it was printed in type which could not easily be read by persons of ordinary vision and because it consisted of two documents with different terms, which at best were unclear, not explicit and so lengthy and convoluted as to be incomprehensible; in Ferrell there was lacking adequate, clear and explicit exculpatory language in that no words such as "release," "remise," "discharge," "waiver" or the like appeared in the document in question; and in Celli there was missing *1034 from the release agreement any satisfactory indication that the defendants there were to be absolved from the consequences of their own negligence.
Such being the case, we are rather of the view that the trial court's determination herein must be tested by those general principles enunciated in Tunkl v. Regents of University of California (1963) 60 Cal.2d 92 [32 Cal. Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693], in the following fashion: "The cases have consistently held that the exculpatory provision may stand only if its does not involve `the public interest.' ...
"In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (Id., at pp. 96, 98-101, fns. omitted.)
At the same time: "[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party, ..." (Ibid., at p. 101.)
As can be seen, by no means other than a most strained construction could the exculpatory instrument in issue involve the public interest in terms of the described components. This, taken together with the fact the remaining characteristics of the instrument are not at odds with those condemned in *1035 the cases previously cited, compels the conclusion the trial court's ruling under the circumstances present was correct.[1]
The order appealed from is affirmed.
Beach, J., and Gates, J., concurred.
Appellants' petition for review by the Supreme Court was denied October 16, 1985.
*1036 
*1037 
NOTES
[1] Appellants also maintain triable issues of fact were created by their assertion a representation by respondents to the effect a "flagman" would be stationed at the place where appellants were injured was fraudulently made. Suffice it to say no allegations respecting fraud were contained in appellants' complaint and that in any event the showing with respect to the purported issue was inadequate for its intended purpose.