[No. B019112. Second Dist., Div. Three. Apr. 14, 1987.]

NORMA COATES et al., Plaintiffs and Appellants, v.
NEWHALL LAND & FARMING, INC., et al., Defendants and
Respondents.

COUNSEL

Harold Greenberg and Michael J. Kelly for Plaintiffs and Appellants.

Shield & Smith and Douglas Fee for Defendants and Respondents.

OPINION

LUI, J.—

### SUMMARY

Charles Coates (Coates) was fatally injured while riding a dirtbike in a park owned and operated by respondents. His heirs sued for wrongful death, alleging that respondents had negligently designed and maintained the trail

on which Coates had been riding, causing Coates's death. The trial court granted respondents' motion for summary judgment, based on a contract Coates had signed before he was injured.

We conclude that a decedent's preinjury contractual assumption of risk eliminates the possibility of tortious conduct by a potential defendant, and thus precludes a wrongful death action, if (1) the contract is not against public policy and (2) the risk encountered by the decedent is inherent in the activity in which the decedent was engaged, or the type of risk the parties contemplated when they executed the contract.

In this case, the "release" which Coates voluntarily signed before entering the park is not contrary to public policy under *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 F.2d 441, 6 A.L.R.3d 693], which permits private, voluntary transactions in which one party assumes a risk which would normally fall on the other party.[1] In addition, the only reasonable inference from the facts alleged in appellants' complaint is that the risk Coates encountered is a risk normally inherent in riding a dirtbike in an outdoor park, and the type of risk the parties contemplated.

We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Respondents owned a recreational park which included a trail used for offroad motorcycle (dirtbike) riding by the public. Coates was legally in the park, having paid the required admission fee. Before entering the park, Coates had signed a "general release."[2] While using the dirtbike trail, Coates was fatally injured.

---

[1] In *Tunkl,* the court concluded that public policy opposes assumption of the risk by a patient entering a hospital; in that context, unlike the situation in this appeal, assumption of the risk is involuntary, due to the essential nature of hospital services.

[2] At the top of the document, printed in bold red letters, were the words: "SINCE ALL MOTORBIKE RIDING IS DANGEROUS WE REQUIRE ALL RIDERS AND VISITORS TO ASSUME ALL RISK BY SIGNING THIS GENERAL RELEASE." At the bottom of the document, the words "MOTORCYCLING IS DANGEROUS" appeared in even larger red print.

The release provided in pertinent part: "[T]he Undersigned, for himself and personal representatives, assigns, heirs and next of kin . . . : [¶] 1. Hereby Releases, Waives, Discharges and Covenants Not To Sue the . . . Park Owner . . . [his] officers and employees, all for purposes herein referred to as Releasees, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss or damage and any claim or demands therefor, on account of injury to the person or property or resulting in death of the Undersigned, *whether caused by the negligence of Releasees or otherwise* while the Undersigned is upon the Park premises . . . .[¶] [T]he Undersigned warrants the following statements are true and correct and understands that the Releasees have relied on them in entering into the foregoing Release . . . and in giving the Undersigned permission to enter the . . . Park: [¶] 1. No oral representations, statements or inducements apart from the foregoing written agreement have been made.

Coates's heirs sued for wrongful death. Their first amended complaint alleged that the fatal injury had been directly caused by respondents' negligence in designing, building, and maintaining the park, and by respondents' breach of an express warranty that the park was safe for its intended use. Respondents generally denied the allegations of the complaint, and alleged as affirmative defenses assumption of the risk and contributory negligence.

A year later, after interrogatories had been answered by both sides, respondents moved for summary judgment. After a hearing, the trial court granted the motion, holding that "the release does preclude the wrongful death action as it would preclude any action by the decedent."

A timely notice of appeal was filed.

### CONTENTIONS ON APPEAL

Appellants' essential contentions may be summarized as follows:

1. Under *Earley* v. *Pacific Electric Ry. Co.* (1917) 176 Cal. 79 [167 P. 513], a cause of action for wrongful death cannot be destroyed by a release given by a decedent while he was alive.

2. Whether Coates knowingly assumed the specific risk that resulted in his death is a triable issue of fact.

3. Respondents refused to answer depositions and interrogatories regarding prior accidents and fatalities in the park, which would have established that respondents had notice of the dangerous condition of their property, supporting an action based on recklessness.

### DISCUSSION

### I

*Review of a Grant of a Motion for Summary Judgment Where the Effect of a Release Is Disputed*

Code of Civil Procedure section 437c, subdivision (c), provides that a motion for summary judgment "shall be granted if all the papers submitted

---

[¶] 2. *The undersigned . . . [is] fully aware of the risks and hazards inherent in entering upon said premises or in participating in any events held in or upon said premises and hereby elect[s] voluntarily to enter upon said premises, knowing the present condition and knowing that said condition may become more hazardous and dangerous . . . [and] voluntarily assume[s] all risks of loss, damage, or injury that may be sustained by [him] . . . while in or upon said premises.* . . . [¶] 5. HE HAS READ AND VOLUNTARILY SIGNS THIS RELEASE AND WAIVER OF ALL LIABILITY AND INDEMNITY AGREEMENT." (Italics added.)

show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

On appeal, "[t]he reviewing court must determine upon a de novo examination of the affidavits whether there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law." (*D'Aquisto* v. *Campbell Industries* (1984) 162 Cal.App.3d 1208, 1212 [209 Cal.Rptr. 108].)

In this case, the facts are undisputed. Therefore, our task is to determine whether, as a matter of law a "release" signed prior to a fatal injury can bar a subsequent wrongful death action and, if so, whether the particular "release" in this case was valid.

## II

*Coates's Assumption of Risk Before Injury Bars His Heirs' Wrongful Death Action*

A. *Unlike the Releases in Earley and Robison, the "Release" in This Case Was an Express Assumption of Risk, Eliminating the Possibility of Tortious Conduct*

Appellants contend that the "release" signed by Coates before he was injured cannot bar their action for wrongful death under Code of Civil Procedure section 377. They note that the damages they suffered are independent from any damages suffered by Coates, and did not accrue until the death of Coates, who had no statutory authority to waive their action.

This appears to be a case of first impression. While there have been California decisions indirectly acknowledging that a decedent's assumption of the risk implied by conduct may bar a wrongful death action (see, e.g., *Johnson* v. *Nicholson* (1958) 159 Cal.App.2d 395, 410-411 [324 P.2d 307]; *Barnett* v. *Garrison* (1949) 93 Cal.App.2d 553, 557 [209 P.2d 426]), we are aware of no prior California cases that deal directly with the issue of a decedent's express, contractual assumption of risk before injury as a bar to a wrongful death action.[3]

---

[3]Respondents cite *Herbert* v. *Superior Court* (1985) 169 Cal.App.3d 718 [215 Cal.Rptr. 477] to support the contention that heirs, in general, are bound by a decedent's premortem contractual agreements. However, the decision in *Herbert* was based on reasoning not applicable in this case. First, the court noted that spouses have mutual obligations of care and support, and occupy a fiduciary relationship to each other, and concluded that a decedent's premortem contractual agreement to arbitrate medical malpractice claims therefore should be binding on his spouse who was a member of his group health plan. Next, the court considered the Code of Civil Procedure sections governing contractual arbitration proceedings, and found

To support their contention, appellants cite *Earley* v. *Pacific Electric Ry. Co., supra,* 176 Cal. 79, and *Robison* v. *Leigh* (1957) 153 Cal.App.2d 730 [315 P.2d 42]. However, both *Earley* and *Robison* are factually and conceptually quite different from this appeal. In both those cases, a party renounced a vested right to sue by signing a release *after* a wrongful, negligent act had caused an injury.

In this case, Coates signed a contract *before* he was injured. (See fn. 2, *ante,* at p. 4.) In the first half of the contract, he expressly *waived liability* for injuries or death which might result from respondents' ordinary negligence in the future. In the second half, he expressly *assumed all risk of injury* from dangers inherent in dirtbike riding on respondents' premises. Both of these agreements differ significantly from the agreements in *Earley* and *Robison* in terms of the incentives given to potential defendants.

By an advance waiver of liability, a potential plaintiff promises not to exercise the right to sue for harm caused in the future by the wrongful behavior of a potential defendant, eliminating a remedy for wrongdoing. By an express assumption of risk, the potential plaintiff agrees not to expect the potential defendant to act carefully, thus eliminating the potential defendant's duty of care, and acknowledging the possibility of negligent wrong-

---

evidence of a legislative intent that a patient who s igns an arbitration agreement may bind his heirs who are not members of his health plan.

The holding in *Herbert* cannot be extended beyond the area of premortem agreements to arbitrate medical malpractice claims without articulating comparable supporting policies.

Another case dealing with the effect of a decedent's premortem actions on his heirs' claims is *Rovegno* v. *San Jose K. of C. Hall Assn.* (1930) 108 Cal.App. 591 [291 P. 848]. Although similar to this appeal, *Rovegno* can be distinguished. There, appellant's son drowned in a swimming pool owned by respondents. Appellant sued for wrongful death, alleging that respondents had been negligent in failing to provide lifeguards at the pool. Respondents' motion for a nonsuit was granted. On appeal, respondents argued that the decedent had assumed the risk of drowning because, as a member, he was bound by a rule of the Knights of Columbus, mailed to the members and posted at the pool, which provided: " 'Bathers using [the] pool do so at their own risk.' " (*Id.,* at pp. 597-598.)

The court rejected this argument, noting that respondents had not based their motion for a nonsuit on these grounds. The court also observed, "This action is based upon alleged *negligence,* while the last suggested defense . . . arises from *contract.* Even though it might have been available against the decedent had he lived and brought suit for damages on account of personal injuries, it cannot operate to defeat his mother's independent statutory right of action . . . ." (*Id.,* 108 Cal.App. at p. 598, italics added, citing *Earley* v. *Pacific Electric Ry. Co., supra,* 176 Cal. 79.)

In our view, the decedent's assumption of risk in *Rovegno* is more properly characterized as implied by conduct (i.e., by swimming without a lifeguard present after reading the warning sign) rather than arising from an express contract. Further, we find that the court's conclusion —that a decedent may never contractually bar his heirs' wrongful death action—was based on a misinterpretation of the rule in *Earley* which, in our view, applies only to true contractual releases of liability and not to contractual assumption of risk before injury. (See Discussion, part II-A, *post.*)

doing. Both agreements permit behavior that normally would be actionable as tortious, although an express assumption of risk goes further, more clearly authorizing this behavior.

Behavior which is authorized is not wrongful and, logically, cannot be the basis of a wrongful death action. ▮ "In its most basic sense, assumption of risk means that the plaintiff, in advance, has given his *express* consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone. [Fn. omitted.] . . . The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence." (Prosser & Keeton, Torts (5th ed. 1984) § 68, pp. 480-481, italics in original.)[4] Therefore, if Coates *validly* assumed the risk of injury which resulted in his death, then we must affirm the judgment below.

B.  *Coates Validly Assumed the Risk Which Caused His Fatal Injury; the Contract He Signed Is Not Against Public Policy, and the Risk He Encountered Is a Risk the Contract Was Intended to Cover*

▮ "A plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent . . . conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy." (Rest.2d Torts, § 496B.)

"[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . ." (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at p. 101.) ▮ Clearly, the recreational park/dirtbike rider contract is a private, voluntary transaction. As the court recently observed in evaluating an agreement much like the one in this case, "by no means other than a most strained construction could the exculpatory instrument in issue involve the public interest . . . ." (*McAtee* v. *Newhall Land & Farming Co.* (1985) 169 Cal.App.3d 1031, 1034 [216 Cal.Rptr. 465]; see also *Okura* v. *United States Cycling Federation* (1986) 186 Cal.App.3d 1462, 1466-1468 [231 Cal.Rptr. 429].)

Appellants rgue that the contract Coates signed states only that "MOTORCYCLING IS DANGEROUS," and that it is a triable issue of fact whether Coates had sufficient knowledge of the *particular risk* which resulted in his

---

[4]"If the defendant seeks to use the agreement to escape responsibility for the consequences of his negligence, then it must so provide, clearly and unequivocally, as by using the word 'negligence' itself." (*Id.,* at p. 484, fn. omitted. See also *Celli* v. *Sports Car Club, Inc.* (1972) 29 Cal.App.3d 511, 518, 519 [105 Cal.Rptr. 904].) In this case the word "negligence" appears in the "release" Coates signed.

death.[5] ■ However, knowledge of a particular risk is unnecessary when there is an express agreement to assume all risk; by express agreement a "plaintiff may undertake to assume all of the risks of a particular ... situation, *whether they are known or unknown to him.*" (Rest.2d Torts, § 496D, com. *a,* italics added; Prosser & Keeton, Torts, *supra,* § 68, p. 482.)[6]

■ Further, the agreement which Coates signed before he entered the park affirmed that *Coates knew the present condition of the park* and assumed all risks of injury that he might sustain while in the park. Finally, even if Coates was visiting the park for the first time, as appellants allege, "neither knowledge of the danger involved, nor appreciation of the magnitude of the risk, requires the clairvoyance to foresee the exact accident and injury which in fact occurred." (*Sperling* v. *Hatch* (1970) 10 Cal.App.3d 54, 61 [88 Cal.Rptr. 704].) Implicit in the knowledge that "motorcycling is dangerous" is the knowledge that riding over rough, uneven terrain in an outdoor park poses a risk of injury from a fall.[7]

---

[5]The irst amended complaint fails to reveal the particular risk Coates encountered, alleging simply that Coates "was fatally injured while using [respondents'] trail." We note that the original complaint alleged that Coates "fell from [a] progressively steepening slope, over [a] hidden cliff, and to his death."

[6]The cases cited by appellants are distinguishable from this case, since they involved *implied* assumption of risk, where knowledge and appreciation of danger must be established.

[7]Like Coates, the appellant in *McAtee, supra,* 169 Cal.App.3d 1031, rode over a cliff-like area and was injured. By finding that the release in that case barred appellant's suit, the court implicitly found that this type of accident falls within the risks assumed by motorcycle riders when they expressly assume "all risks." However, the question whether such a release would bar a wrongful death action was not decided, because McAtee survived and sued for his own injuries. (See also *Okura* v. *United States Cycling Federation, supra,* 186 Cal.App.3d at pp. 1464-1465, 1468-1469 [finding that risk of falling when bicycle hit loose debris while crossing railroad tracks on race course was type of risk assumed by bicycle race participant when he signed preincident release, despite lack of opportunity to inspect course before race].)

*Arnold* v. *Shawano County Agr. Soc.* (1983) 111 Wis.2d 203 [330 N.W.2d 773], cited by appellants at oral argument as persuasive authority, can be distinguished. There, a race car driver suffered severe brain damage when, *during rescue operations,* fire extinguishing chemicals were sprayed on his burning vehicle while he was still inside. He sued the sponsor of the race, who moved for summary judgment based on an exculpatory contract much like the one in this appeal.

The Wisconsin Supreme Court concluded, "While it would be reasonable to assume that this exculpatory contract was intended *to preclude liability for such things as negligent maintenance of the track* or the negligent driving of another driver participant, we cannot conclude that this contract was meant to cover negligent rescue operations. We believe that an issue of material fact exists as to whether the risk of negligent rescue operations was within the contemplation of the parties at the time the exculpatory contract was executed." (330 N.W.2d at p. 778.)

Conversely, in this case the only reasonable inference is that the risk of injury from a fall while riding over uneven terrain was exactly the type of risk the parties contemplated when the contract was executed. Although the scope of a release and the intention of the parties is sometimes a question of fact, here, where the terms of the contract are not ambiguous, the intention of the parties can be ascertained from the writing alone, as a matter of law. (See Civ. Code, § 1639.)

By contractually agreeing to assume all the risks of dirtbike riding on respondents' premises, Coates consented to certain acts or omissions by respondents which would otherwise be negligent. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 161, p. 2451.) Just as appellants' wrongful death recovery would be reduced if Coates's actions were contributorily negligent (see *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 552 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158]) and barred if respondents' actions were justified (see *Nakashima* v. *Takase* (1935) 8 Cal.App.2d 35, 38 [46 P.2d 1020]), so is it destroyed by Coates's contractual consent.

### III

*Any Disputed Fact Which Relates to Recklessness Is Not a Material Fact in an Action Based on Negligence*

Appellants argue that respondents "refused to provide [appellants] with any information [during discovery] regarding prior accidents and fatalities which users of the . . . [p]ark have suffered," and that this information would have established that respondents had notice of the dangerous condition of their property, supporting an action based on recklessness.

Because appellants declined to accept the trial court's offer to grant a continuance so that appellants could conduct more discovery, or file a motion to compel discovery, this issue is not properly before this court.

Furthermore, because appellants' amended complaint charged respondents with *negligence,* any disputed fact which relates to *recklessness* is not a material fact, and does not prevent a summary judgment.

DISPOSITION

The judgment is affirmed.

Klein, P. J., and Arabian, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 1, 1987.