[No. B026108. Second Dist., Div. One. Mar. 23, 1988.]

MICHAEL KURASHIGE, Plaintiff and Appellant, v.
INDIAN DUNES, INC., et al., Defendants and Respondents.

**COUNSEL**

Schwartz & Schwartz and Randall Brian Schwartz for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Gary C. Ottoson, Roy G. Weatherup, Frank K. Berfield and Kenneth C. Byrne for Defendants and Respondents.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Michael Kurashige appeals from a summary judgment granted in favor of defendants Indian Dunes, Inc. and Newhall Land & Farming Company.

### STATEMENT OF FACTS

Indian Dunes Park (Park) was owned by defendant Indian Dunes, Inc. Ownership was transferred to it by defendant Newhall Land & Farming Co. in 1976. The Park was used by the general public for motorcycle dirtbike riding.

On December 21, 1982, plaintiff was injured at the Park while riding his motorcycle dirtbike on the Park's trails. Before using the Park, plaintiff signed a "General Release" agreement, an exact copy of which is attached hereto as an appendix.

The agreement is titled "Indian Dunes Park General Release," in 10 point regular print type in capital letters. Below it is printed, in red ink in 10 point bold print type in capital letters "Since all motorbike riding is dangerous we require all riders and visitors to assume all risk by signing this general release." The following release clauses are printed in 9-point print type. At the bottom of the agreement, the words "motorcycling is dangerous" are written in red in 17 point bold print. Below the agreement are three rows consisting of 28 lines each printed across the page for the riders to sign; printed on each of the 84 lines are the words "this is a release," in capital letters.

The agreement provides in pertinent part that each of the undersigned "Hereby Releases, Waives, Discharges and Covenants not to sue [defendants], all for purposes herein referred to as Releasees, from all liability to the Undersigned . . . for all loss or damage and any claim or demands therefor, on account of injury to the person or property or resulting in death

of the Undersigned, whether caused by the negligence of Releasees or otherwise while the Undersigned is upon the Park premises . . . ." Further, each of the undersigned warrants he is "fully aware of the risks and hazards inherent in entering upon said premises or in participating in any events held in or upon said premises and hereby elect[s] voluntarily to enter upon said premises, knowing the present condition and knowing that said condition may become more hazardous and dangerous during the time that the undersigned [is] upon said premises. The undersigned . . . hereby voluntarily assume[s] all risks of loss, damage, or injury that may be sustained by [him], any damage to any property of the undersigned . . . while in or upon said premises." Finally, the undersigned warrants, in bold print and capital letters, "he has read and voluntarily signs this release and waiver of all liability and indemnity agreement."

## CONTENTION

Plaintiff contends summary judgment was not properly granted to defendants, in that the "General Release" agreement was unconscionable. For the reasons set forth below, we disagree.

## DISCUSSION

Plaintiff opposed summary judgment on the grounds the exculpatory language in the "General Release" agreement was invalid and the agreement was unconscionable. The trial court granted summary judgment on the ground the exculpatory language was valid, relying on *McAtee* v. *Newhall Land & Farming Co.* (1985) 169 Cal.App.3d 1031 [216 Cal.Rptr. 465]. It did not rule on the issue of unconscionability.

A motion for summary judgment properly is granted where the "affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice . . . may be taken" in support of and in opposition to the motion "show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (b), (c).) The parties' papers show no factual dispute relating to the issue of unconscionability. Therefore, the question is whether defendants were entitled to summary judgment as a matter of law.

In *McAtee* v. *Newhall Land & Farming Co., supra,* 169 Cal.App.3d 1031, plaintiffs were injured while participating in a motorcycle race sponsored by American Motorcross Enterprises on land owned by defendant. Each plaintiff signed a "Release and Waiver of Liability and Indemnity Agreement" which provided, inter alia, each released, waived, discharged and covenant-

ed not to sue defendant for all loss, damage or claim based on injury caused by defendant's negligence or otherwise, and each assumed full responsibility for and risk of injury or damage, and each acknowledged the danger and risk of his activities. The trial court granted summary judgment to defendant on the basis of the release and waiver agreements.

On appeal, plaintiffs contended the trial court's ruling was in error, relying upon *Conservatorship of Link* (1984) 158 Cal.App.3d 138 [205 Cal.Rptr. 513], *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309 [195 Cal.Rptr. 90] and *Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511 [105 Cal.Rptr. 904]. The appellate court ruled all were inapposite: "[I]n *Link* a purported release agreement required as a condition of entry to a racing event was held unenforceable because it was printed in type which could not easily be read by persons of ordinary vision and because it consisted of two documents with different terms, which at best were unclear, not explicit and so lengthy and convoluted as to be incomprehensible; in *Ferrell* there was lacking adequate, clear and explicit exculpatory language in that no words such as 'release,' 'remise,' 'discharge,' 'waiver' or the like appeared in the document in question; and in *Celli* there was missing from the release agreement any satisfactory indication that the defendants there were to be absolved from the consequences of their own negligence." (*McAtee* v. *Newhall Land & Farming Co., supra,* 169 Cal.App.3d at pp. 1033-1034.)

■ The court therefore tested the facts by the principles enunciated in *Tunkl* v. *Regents of the University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]. (*McAtee, supra,* 169 Cal.App.3d at p. 1034.) *Tunkl* provides an " 'exculpatory provision may stand only if it[ ] does not involve "the public interest." . . . [¶] In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhe-

sion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.' " (*Ibid.,* quoting from *Tunkl, supra,* at pp. 96, 98-101, fns. in *Tunkl* omitted.) ▆ Moreover, there is no public policy which " 'opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party, . . .' " (*McAtee, supra,* at p. 1034, quoting from *Tunkl, supra,* at p. 101.)

The *McAtee* court concludes the release and waivers did not involve the public interest. Neither did they have the characteristics previously condemned in *Link, Ferrell* and *Celli.* Therefore, the trial court properly granted summary judgment. (169 Cal.App.3d at pp. 1034-1035.)

▆ As in *McAtee,* the "General Release" agreement used here was printed legibly, contained adequate, clear and explicit exculpatory language and indicated defendants were to be absolved from the consequences of their own negligence. (169 Cal.App.3d at pp. 1033-1034.) Furthermore, it did not involve the public interest: defendants' business was not generally thought to be suitable for public regulation; defendants did not perform a service of great importance to the public, and the business was not a matter of practical necessity for members of the public; and defendants' customers did not place their persons under defendants' control. (*Id.,* at p. 1034.)

This was the result reached in *Coates* v. *Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1 [236 Cal.Rptr. 181], review denied July 1, 1987, which involved the same recreational park and "General Release" agreement at issue here. Defendant was granted a summary judgment on the ground the release precluded a wrongful death action. The Court of Appeal concluded the agreement did not involve the public interest and was a " 'private, voluntary transaction[] in which [the decedent], for a consideration, agree[d] to shoulder a risk which the law would otherwise have placed upon [the defendant],' " as contemplated by *Tunkl.* (At p. 8.) Therefore, summary judgment properly was granted to defendant.

It is clear, under *McAtee* and *Coates,* the "General Release" exculpatory clauses are valid. However, neither case addresses the question whether the clauses are unconscionable, as plaintiff claims here.

Civil Code section 1670.5, dealing with the effect of unconscionable contracts or clauses, provides: "(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the

time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. [¶] (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

■ *A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473 [186 Cal.Rptr. 114, 38 A.L.R.4th 1] observes: " '[U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' . . . Phrased another way, unconscionability has both a 'procedural' and a 'substantive' element. . . .

"The procedural element focuses on two factors: 'oppression' and 'surprise.' . . . 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' . . . 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. . . . Characteristically, the form contract is drafted by the party with the superior bargaining position. . . ." (*Id.,* at p. 486, citations omitted.)

"No precise definition of substantive unconscionability can be proffered. Cases have talked in terms of 'overly harsh' or 'one-sided' results. . . . One commentator has pointed out, however, that '. . . unconscionability turns not only on a "one-sided" result, but also on an absence of "justification" for it. [*sic*]' . . . , which is only to say that substantive unconscionability must be evaluated as of the time the contract was made. . . . The most detailed and specific commentaries observe that a contract is largely an allocation of risks between the parties, and therefore that a contractual term is substantially suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner. . . . But not all unreasonable risk reallocations are unconscionable; rather, enforceability of the clause is tied to the procedural aspects of unconscionability . . . such that the greater the unfair surprise or inequality of bargaining power, the less unreasonable the risk reallocation which will be tolerated. . . ." (*Id.,* at p. 487, citations omitted.)

■ Turning to the procedural element of unconscionability, the first question is whether the "General Release" agreement was oppressive, whether there was "an inequality in bargaining power which result[ed] in

no real negotiation and 'an absence of meaningful choice.'" (*Id.,* at p. 486.) The record shows there was no real negotiation; the "General Release" agreement was preprinted and all users of Indian Dunes Park were required to sign it before using the park. However, the record does not show plaintiff had no meaningful choice in deciding to sign the agreement. The meaningfulness of a party's choice is based not only on his relationship to the other party but also on his ability to obtain the goods or services which are the subject of the parties' contract from others. (See *Henningsen* v. *Bloomfield Motors, Inc.* (1960) 32 N.J. 358 [161 A.2d 69, 86-87, 75 A.L.R.2d 1].) There is no evidence plaintiff could not have ridden his motorcycle elsewhere without the constraints imposed upon him by defendants.

The next question is whether plaintiff was surprised by supposedly agreed-upon terms hidden within a printed form drafted by defendants. The entire release agreement was printed at the top of the form signed by plaintiff. Warnings as to the dangers of motorcycling, the rider's assumption of the risk and the release and waiver of all liability stood out and the exculpatory provisions of the agreement were clearly set forth. Thus, the agreement was not procedurally unconscionable.

■ In examining the issue of substantive unconscionability, one question to be asked is whether the agreement was one-sided and, if so, whether the one-sidedness was justified. (*A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 487.) A further question is whether the agreement reallocated the risks of the bargain in an objectively unreasonable or unexpected manner. (*Ibid.*) Risk reallocation which will be subjected to special scrutiny is that in which the risk shifted to a party is one that only the other party can avoid. (*Id.,* at p. 493.)

■ Clearly, the agreement here was one-sided; all of the risk was reallocated to the Park's user, plaintiff. As previously discussed, the risk reallocation was not unexpected; the agreement clearly indicated the user assumed all risk of his use of the Park's facilities.

Was the risk reallocation objectively unreasonable? One signing the agreement warrants he knows "the present condition [of the Park and] that said condition may become more hazardous and dangerous during the time [he is] upon said premises." The agreement warned the user motorcycling is dangerous; implicit in the knowledge of the danger of motorcycling "is the knowledge that riding over rough, uneven terrain in an outdoor park poses a risk of injury from a fall" or other accident (*Coates* v. *Newhall Land & Farming, Inc., supra,* 191 Cal.App.3d at p. 9). Moreover, to a certain extent, the risk of injury is conditioned upon the user's skill and experience as a motorcycle rider, factors over which the Park's owners and operators have

no control. In view of the foregoing, the risk reallocation was not unreasonable and the "General Release" agreement was not substantively unconscionable.

 Therefore, the "General Release" agreement was not unconscionable. The trial court did not err in granting summary judgment to defendants, in that the "General Release" agreement was enforceable and, under it, defendants were not liable for plaintiff's injury as a matter of law.

The judgment is affirmed.

Hanson, J., and Lucas, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 8, 1988.

# APPENDIX

### INDIAN DUNES PARK
### GENERAL RELEASE

**SINCE ALL MOTORBIKE RIDING IS DANGEROUS WE REQUIRE ALL RIDERS AND VISITORS TO ASSUME ALL RISK BY SIGNING THIS GENERAL RELEASE.**

In consideration of being permitted to enter for any purpose the premises of Indian Dunes Park (including but not limited to the pit area, the spectator, picnic and parking areas, the racing basin surface and hill climbs, including concessions and other appurtenances therein) each of the Undersigned, for himself and personal representatives, assigns, heirs and next of kin, or either of them:

1. Hereby Releases Waives Discharges and Covenants Not To Sue the Promoter, Racing Association, Park Operator, Park Owner, and each of them, their officers and employees all for purposes herein referred to as Releasees, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss or damage and any claim or demands therefor, on account of injury to the person or property or resulting in death of the Undersigned, whether caused by the negligence of Releasees or otherwise while the Undersigned is upon the Park premises, and

2 Hereby Agrees To Indemnify And Save And Hold Harmless the Releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of any action of the Undersigned in or about the Park premises and whether caused by the negligence of the Releasees or otherwise.

Each of the Undersigned expressly agrees that the foregoing Release, Waiver and Indemnity Agreement is intended to be as broad and inclusive as is permitted by the law of the State of California and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

Each of the Undersigned warrants the following statements are true and correct and understands that the Releasees have relied on them in entering into the foregoing Release, Waiver and Indemnity Agreement and in giving the Undersigned permission to enter the Indian Dunes Park:

1. No oral representations, statements or inducements apart from the foregoing written agreement have been made.

2 The undersigned, individually are fully aware of the risks and hazards inherent in entering upon said premises or in participating in any events held in or upon said premises and hereby elect voluntarily to enter upon said premises, knowing the present condition and knowing that said condition may become more hazardous and dangerous during the time that the undersigned or either of them are upon said premises. The undersigned individually hereby voluntarily assume all risks of loss, damage, or injury that may be sustained by them, or any of them, any damage to any property of the unders ied, or any of them while in or upon said premises.

3. That he is an independent contractor, or the employee or agent of an independent contractor, and assumes and takes all responsibility for all wages, premiums and taxes, if any, payable on any funds he may receive as a result of his activities, including, without limiting the generality of the foregoing, social security taxes, unemployment insurance taxes, compensation insurance, income taxes and withholding taxes.

4. That he gives consent to whatever medical care might be provided or available on the premises and further agrees to conform and comply with all the rules and regulations of Indian Dunes Park

5. HE HAS READ AND VOLUNTARILY SIGNS THIS RELEASE AND WAIVER OF ALL LIABILITY AND INDEMNITY AGREEMENT **MOTOR CYCLING IS DANGEROUS**

In witness whereof each of the undersigned has executed this release dated this day _____ 19___

| | | |
|---|---|---|
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |
| THIS IS A RELEASE | THIS IS A RELEASE | THIS IS A RELEASE |